No. 13,883.

GINSBERG ET AL. *v*. BENNETT ET AL.

(71 P. [2d] 419)

Decided July 6, 1937. Rehearing denied September 13, 1937.

122

Messrs. BLOUNT, SILVERSTEIN & ROSNER, for plaintiffs in error.

Messrs. BENEDICT & PHELPS, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

ON July 1, 1929, the Temple Court Investment Company was the owner of what is known as the Temple Court Building situate on the corner of Fifteenth and California streets in Denver, Colorado, subject to the following encumbrances: (1) First deed of trust, dated March 27, 1928, in favor of the First National Bank of Denver to secure $275,000. (2) Second deed of trust bearing the same date, in favor of the Bennett & Myers Investment Company to secure $75,000. (3) Third deed of trust, dated July 1, 1929, in favor of E. S. Goalstone and Charles Ginsberg to secure $25,000.

Prior to April 1, 1931, the last deed of trust and the note secured thereby were transferred to the plaintiffs in error here, who are the owners of the same.

The parties appear here in the same order as in the court below and we shall refer to the defendant Horace W. Bennett as "Bennett" and to the defendant the Bennett & Myers Investment Company as "Bennett & Myers," or to both as defendants, and we shall refer to the plaintiffs in error as plaintiffs.

The encumbrances of Bennett & Myers and of the plaintiffs, in addition to the real estate, pledged the rents, income, issues and profits of said property as security for the respective indebtedness, and provided that in the event of default in the payment of interest, or in other defaults, the holders of the notes were entitled to immediate possession and use of the property and to the rents, issues and profits thereof during the pendency of the foreclosure proceedings and the period of redemption and contained the customary provisions for the enforcement of such right through appropriate court proceedings or the appointment of a receiver.

Sometime prior to April 1, 1931, the Temple Court

Investment Company had become delinquent on interest on the first encumbrance, on the Bennett & Myers deed of trust, and in the payment of the 1930 taxes, as a consequence of which Bennett, who was the head of Horace W. Bennett & Company which carried on the business of Bennett & Myers, was given possession of the premises, with the right to collect the rents, issues and profits thereof under the terms of a written agreement with the record owner of the property, the Temple Court Investment Company. This agreement recited that in order to induce Bennett & Myers to withhold foreclosure on its second mortgage for a period of sixty days, the owner of the premises authorized Bennett to take possession of the premises and collect the rents until such time as the delinquent interest on the indebtedness of Bennett & Myers secured by their deed of trust and any money due to it or Bennett by reason of advances made for maintenance, interest on other encumbrances, taxes or insurance shall have been fully paid. By the contract Bennett agreed to act as agent of the premises, take care of them and from the income was to pay the costs of operation, together with a 3 per cent commission, and from the net pay the interest due on the first, second and third encumbrances, the taxes and insurance premiums. Subsequently, Bennett & Myers proceeded to foreclose their second mortgage through the public trustee. The sale took place on July 14, 1931. At the sale Bennett & Myers bid the sum of $90,400 and received a public trustee's certificate of purchase. The bid included the principal of their note, $75,000, interest thereon, as well as interest advanced on the first and third encumbrances; taxes paid to the extent of over $11,250; insurance, $840, together with all costs and expenses, including the sum of $1,000 as alleged attorneys' fees, after giving credit on said amounts for an item of $5,000 for net rents. Bennett & Myers claimed at the time and now that this bid left a deficiency due them of $77.39.

On the next day, July 15, 1931, the plaintiffs made

demand upon Bennett & Myers and the Temple Court Investment Company for the rents, income and profits of the building and the right to collect and receive the same to apply on their indebtedness, with which demand Bennett & Myers refused to comply. On October 10, 1931, the plaintiffs brought a suit to foreclose their third mortgage and applied for appointment of a receiver, which was denied by the district court. This ruling was taken to this court for review, but before the case was reached here the period for redemption on the second encumbrance had expired and the public trustee had issued the deed for the premises to Bennett & Myers, because of which this court of its own motion and for the expressed reason that the appointment of a receiver had then become moot, dismissed the writ of error.

After the last mentioned writ of error was dismissed, the plaintiffs applied in the same case in the district court for leave to file a supplemental complaint to make Bennett individually a party defendant and asked for an accounting of rents and profits from the premises. The right to file the amended complaint was denied and the entire proceeding was dismissed by the district court. This ruling was likewise brought to this court for review, but the writ of error was afterwards dismissed by the plaintiffs without prejudice to their right to bring another suit. Thereafter the case before us was filed to secure an accounting from Bennett, and Bennett & Myers, for the rents, issues and profits of the Temple Court Building during the entire period from April 1, 1931, the date possession was taken under the agreement we have mentioned, up to and including April 15, 1932, the date the deed issued under the foreclosure.

The First National Bank of Denver is not a party to this cause of action, and neither its first deed of trust nor its interest in the property are in any way involved in this proceeding. The Temple Court Investment Company, which was joined as a defendant and served, made no appearance in the district court and its default was

there entered and it does not appear in the proceeding before us.

By their pleading and proof the plaintiffs have divided the period during which an accounting is sought into two parts: the first beginning at the time possession was taken under the contract and terminating as of the date of the sale; and the second beginning on the date of the sale and extending to the time deed issued. As the basis for an accounting during the first part of the period, plaintiffs contend that considering the defendants' bid at the foreclosure sale, had the rentals been applied as provided by the contract there should be in fact a surplus to which plaintiffs are entitled. The defendants deny this contention and allege, as we have indicated, that even after crediting the net rents, there was a small deficiency due them on their indebtedness.

As to the second division of the period involved it is plaintiffs' theory that the Bennett & Myers mortgage was paid in full and all their advances and indebtedness fully discharged and cancelled on July 14, 1931, by their bid at their own foreclosure sale, from which date they had no mortgage, no deed, no obligation or any demand or any right to the possession or rents of the Temple Court Building and that plaintiffs, under their third mortgage were entitled to the rents during the redemption period. By their answer the defendants assert they were entitled to the possession of the property during the period of redemption and had the right to collect the rents and apply them, as they did, under the terms of their deed of trust and pursuant to the provisions of the agreement we have mentioned, and also by the authority of chapter 151, S. L. 1929. By their replication the plaintiffs allege that chapter 151, supra, did not take effect until 90 days after May 3, 1929, which was subsequent to the date of their deed of trust and that by reason thereof chapter 151, supra, as to plaintiffs, is inoperative and in contravention of the Constitution of the United States as well as the Constitution of Colorado because if applied, it

would become retrospective in its operation and would impair the obligation of plaintiffs' deed of trust. The judgment of the lower court was for the defendants.

█ In the consideration of the case it must be borne in mind that neither the right to the possession of the property nor the application of the rents therefrom during the redemption period as between the holder of the certificate of purchase and the fee owner is in issue. It is uncontroverted that Bennett was given the legal possession of the property on April 1, 1931, by contract with the owner. It further appears that the owner at no time subsequent to the above date made demand for the possession of the premises or for an accounting from the rents.

In the final analysis, by the action at bar a junior encumbrancer simply seeks an accounting for rents collected during the redemption period by the holder of a certificate of purchase, issued under a foreclosure of a prior deed of trust, who, in the first instance, had secured possession of the property and the rents under an agreement with the owner and held them without protest from the owner during the redemption period. Since no redemption was attempted by the holder of the junior encumbrance, no question of the status of the parties and the amount required to redeem, or the application of the rents in such event is involved here. Clearly, during the period between the date possession was taken under the contract and the date of the foreclosure sale, Bennett had the right to collect the rents and disburse them in accordance with his contract. Possession under this agreement and the stewardship resulting therefrom, it seems to us, as definitely made effective the passive lien of the defendants upon the rents, issues and profits of the premises given them by their deed of trust, as would have been the case if, pending the foreclosure and preceding the sale, they had procured the appointment of a receiver to manage the property and collect the rents, issues and profits therefrom.

In the case of *Plains Company v. Hood,* 76 Colo. 322, 230 Pac. 1008, cited by the plaintiffs, this court held that where the mortgagee at a foreclosure sale of land, bid the entire amount of the mortgage debt including costs and expenses, surrendered the note and mortgage and accepted a certificate of purchase, the transaction constituted full payment of the mortgage indebtedness. In that case, after the institution of the foreclosure proceedings, the mortgagee procured the appointment of a receiver to take possession of the mortgaged premises and impound the rents and profits. Thereafter the receiver was discharged and the mortgagor reinvested with possession on his motion. It was held that this judgment, being unreversed, gave to the mortgagor the use and right of possession of the premises during the period of redemption. The plaintiffs contend on the basis of this authority that the Bennett & Myers bid at the foreclosure sale discharged the debt created by the deed of trust in full and at the moment of the bid all of the rights to possession and all right and claim of the defendants to the rents thereupon ceased. Under the circumstances of the case at bar we do not believe that *Plains Company v. Hood, supra,* can be held to be authority for plaintiffs' contention. The action there was between a mortgagor, who had been reinvested with the possession of the mortgaged property on his motion during the pendency of the foreclosure proceedings; while in the case at bar, the owner, who had previously entered into an agreement giving possession of the premises to the defendants, at no time even so much as demanded return of possession of the premises or rents during the redemption period. It is also obvious that there is a marked difference between the rights of a junior encumbrancer and the record owner of the premises in cases of this character. In the case of *Christian v. Jewell,* 82 Colo. 222, 257 Pac. 1082, the scope of the decision in *Plains Company v. Hood, supra,* is clearly and definitely pointed out by Mr. Justice

Campbell, who wrote the opinion in both cases. It was determined by the Christian v. Jewell case, supra, that where a receiver is appointed pending foreclosure proceedings and the mortgagor is insolvent and the property inadequate to pay the indebtedness, the mortgagee, notwithstanding the fact he had bid in the property for the amount of the principal of the debt, interest due thereon and costs of sale and had received a certificate of purchase, had the right to have the receiver remain in possession and collect the rents and discharge the unpaid and delinquent taxes, insurance and repairs, all of which were secured, as in the case at bar, by the instrument of encumbrance. The distinction between the cases of *Plains Company v. Hood* and *Christian v. Jewell, supra*, is pointed out in the words of Mr. Justice Campbell, in the latter case at pages 224, 225, as follows: ''As we gather from the record and the briefs of counsel, the trial judge discharged the receiver on the authority of the Hood [*Plains Company v. Hood, supra*] case. That case rightly understood does not furnish warrant for the judgment under review. In the Hood case the mortgagee, as here, availed himself of the right given to him by the mortgage and applied for a receiver, who was appointed, but thereafter the order of appointment was set aside and the receiver discharged and the mortgagor reinvested with possession. The mortgagee acquiesced in the decision. * * * That judgment of dismissal remained unreversed. For such reasons we held that the mortgagee in the Hood case was not in a position to invoke the equitable doctrine authorizing the appointment of a receiver to collect rents and profits. We did not decide in that case what the defendants here apparently think we did.''

Even if it be conceded, as plaintiffs contend, that the bid of the defendants was for the full amount of the mortgage at the foreclosure sale, and thereby had the effect of extinguishing the *deed of trust* indebtedness, such fact under the authority of *Christian v. Jewell,*

*supra,* would not have deprived the defendants from making application for, and securing the appointment of, a receiver to impound the rents for application as directed by the court during the redemption period. Under defendants' view of the case, which we believe to be correct, they, being in possession of the property under an agreement with the owner with the right to collect the rents therefrom, were under no necessity to procure the appointment of a receiver. The district court in denying plaintiffs' application for a receivership made after the foreclosure sale, concededly took this view of the matter. The Supreme Court of Nebraska, in the case of *Hays v. Christiansen,* 105 Neb. 586, 181 N. W. 379, where a mortgagee had entered into the possession of mortgaged premises during the pendency of the foreclosure proceedings, under an agreement with the mortgagor to manage the same and apply the net rents and profits toward the payment of the mortgage debt; held that the mortgagee could not renounce the trust after the foreclosure sale and successfully apply for the appointment of a receiver to do what was required of him and within his power under the agreement.

■ Looking at the case from a different angle, it certainly cannot be contended that the plaintiffs have greater rights under the existing situation than would have been available to them had they been successful in securing the appointment of a receiver on the application made to the district court. If a receiver had been appointed at that time, under the authority of *Christian v. Jewell, supra,* he would have been required by the court to manage the property and from the net rentals discharge at least the unpaid and delinquent taxes, insurance and repairs. Such a receivership might have continued during the entire redemption period and if any surplus of the rents collected remained after the payment of the items approved by the court, such surplus would be apportioned by the court in accordance with the rights of the interested parties. We believe the analogy of a re-

ceivership must be adhered to during the entire period covered by this case and the rights of the parties must be determined upon the same basis as if Bennett had entered into possession of the premises under appointment as receiver.

It can be properly inferred from the record in this case that the owner of the property is insolvent and that the mortgaged premises themselves are inadequate to pay the indebtedness represented by the three encumbrances thereof.

The equitable doctrine we have referred to as being announced in the case of *Christian v. Jewell, supra,* has as its basis the protection of the corpus of the mortgaged property during the pendency of the foreclosure proceedings and until the time for redemption has expired. The application of this rule in a case of the character of the one at bar is assurance to the certificate holder, the owner, and any and all persons who may be entitled to redeem or who may be interested in an equity in the property that until the deed actually issues the rents, issues and profits from the mortgaged premises will be used in the protection of the corpus of the property.

Under our conclusions it is not necessary to determine whether the provisions of section 9, chapter 151, S. L. 1929, supra, apply to the deed of trust of the defendant or is an abrogation thereof. The statute in question applies primarily to the obligation of the owner of the premises while in possession and the rights of the holder of the certificate of purchase, where the owner abandons possession. In a secondary sense Bennett may have been the agent of the owner, but his possession was primarily based upon and in the interest and benefit of Bennett & Myers and the protection of the corpus of the encumbered premises.

As we have said, Bennett, during the period from April 1, 1931, to the date of the foreclosure sale on July 14, 1931, in accordance with the specific terms of

the agreement, had the right to collect the rentals and to pay the items therein specified and to reimburse himself or Bennett & Myers for money advanced in this connection. If on the day of sale there was any surplus from the rents, such surplus could at least be applied upon the interest on the Bennett & Myers mortgage and likely upon the principal indebtedness. Following the sale and the issue of the certificate of purchase to Bennett & Myers, as we have hereinbefore indicated, it was proper for Bennett to continue to collect the rents from the building, and under the analogy of a receivership and by the authority of *Christian v. Jewell, supra,* to pay from the gross rentals the expenses of operation and repair, unpaid and delinquent taxes and insurance. Under the particular circumstances of the case at bar we believe it proper to extend the doctrine of that case to include in the items just enumerated the payment of the interest on the first encumbrance of the First National Bank during the redemption period. The plaintiffs, as the holders of the junior encumbrance, by reason of their demand made upon the defendants on the day of the foreclosure sale, and especially in view of the further fact that the owner of the premises, although originally made a party to this suit and served with summons, does not appear, are entitled to an accounting and to any surplus of rentals above the items we have indicated. We have heretofore set out in the opinion the component elements of the bid of the defendants as shown by the public trustee's records and which states that $5001.08 net rentals was credited on the gross amount due in arriving at the amount of the net bid. The defendants now claim that this credit should have been $2801.46 instead of the amount first mentioned. They say in their brief: "How this error occurred is impossible of understanding." The plaintiffs, of course, contend that defendants are precluded as to the amount of net rentals as of that date by the statement in the public trustee's records. This condition likely would be a proper subject of inquiry in

a proceeding between the judgment debtor and the defendants here involving a deficiency judgment, or in case a redemption had been attempted, but in an accounting for the rents is not directly involved. It was the apparent intention of the defendants to bid the full amount due under their deed of trust which would have the effect of satisfying the deed of trust indebtedness and precluding them from applying the rental proceeds after the sale thereon. However this may be, we do not believe, as suggested by plaintiffs, that in a case between the parties here for an accounting, the circumstance, if a fact, that items, such as interest, insurance and taxes, which might have been paid, before the sale from the rentals under the agreement, were included in the bid, are thereby eliminated from the accounting on the theory that they were paid by the bid. This case simply amounts to a situation where the defendants were entitled to pay from the rentals during the periods involved, the items we have specified, including their interest up to the day of sale, and if any surplus remains it should be paid to the plaintiffs.

In the trial below considerable evidence was introduced, all based upon the figures furnished by the defendants, with reference to the correctness of amounts which we have held were properly deductible from the rents during the period involved. The testimony was largely of expert character and involved a number of so-called adjustments by accountants who were in direct and irreconcilable conflict in their final analyses. The findings of the trial court were general and the judgment apparently based on the Act of 1929, supra, and we cannot say that specific consideration was given to these matters of accounting. Although this evidence is contained in the record, we do not believe it feasible or proper for this court to attempt to enter final judgment therefrom. The case, therefore, will be reversed and the cause remanded for further proceedings in the district court not inconsistent with this opinion.

In view of the fact that the cause is remanded for the accounting indicated, we deem it proper to mention our view on some of the controverted questions.

■ In the computation of the amount due at the time of the sale and included in the bid was an item of $1,000 attorneys' fees. Under the authority of *Jones v. National Bank*, 74 Colo. 140, 219 Pac. 780, and *Florence Co. v. Hiawatha Co.*, 55 Colo. 378, 135 Pac. 454, the plaintiffs contend that in the absence of proof to the effect this charge was actually paid or incurred by the defendants in connection with the foreclosure, it should not be included as an item of expense. As we understand it the defendants contend that this $1,000 attorneys' fees was never deducted from the rents. Whatever may be the actual fact, it seems to us certain that in the accounting no deduction from the rentals should be made upon this account.

■ There is also a dispute with reference to the matter of deduction for fire and liability insurance. With reference to the former we believe the defendants are entitled to pay from the rentals the actual cost on a prorata basis for the period involved. Any consideration given the expense of liability insurance must be upon the theory that it is a proper operating cost rather than an expenditure for the preservation of the corpus of the mortgaged property and is a question of fact to be determined by the trial court.

The same factual determination must, of course, control with reference to the items claimed as not allowable by the plaintiffs for repairs to the building. We also believe it proper in the final order to make some proper provision with reference to the disposition, when paid, of uncollected rentals accruing during the period involved.

Judgment reversed and cause remanded with directions.

MR. JUSTICE BOUCK not participating.