**CENTRAL STATES LIFE INS. CO. v. CARLSON et al.**

**In re CHILTON.**

**No. 1593.**

Circuit Court of Appeals, Tenth Circuit.
June 18, 1938.

Rehearing Denied Aug. 15, 1938.

J. P. Nordlund, of Denver, Colo. (Wm. E. Hutton, of Denver, Colo., on the brief), for appellant.

James R. Hoffman, of Denver, Colo., for appellees.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is a proceeding under section 75 of the Bankruptcy Act, as amended (11 U.S.C. A. § 203), and the question is whether money in the hands of the trustee representing operating revenue from mortgaged real property should be applied (1) to the payment of accrued taxes on such property, and (2) to the unpaid balance due upon a deficiency after foreclosure and sale of such property, or be distributed among general creditors.

The Harvester Investment Company, a corporation, being the then owner of a ranch situated in Weld County, Colorado, on December 29, 1924, executed a mortgage upon the land to The Western National Life Insurance Company to secure a promissory note of $54,025 payable in sixty-five semi-annual installments, including interest. The note and mortgage were assigned to Central States Life Insurance Company, hereinafter called the insurance company, in July, 1926. James William Chilton acquired the land by deed in July, 1933. The conveyance recited that it was subject to the mortgage, but Chilton did not assume the debt or obligate himself to pay it. Default was made in payment of the installment due January 1, 1932, July 1, 1932, January 1, 1933, July 1, 1933, January 1, 1934, and July 1, 1934, also in payment of taxes. Acting

under acceleration clauses contained in the note and mortgage, the insurance company on July 3, 1934, declared the entire unpaid amount of the mortgage indebtedness due and instituted a suit in the district court of Weld County for the foreclosure of the mortgage and the appointment of a receiver. The Harvester Investment Company, Chilton, and others, were joined as defendants; and process was served on Chilton on July 9th.

On July 25th, Chilton filed a petition in the United States Court for Colorado under section 75 praying for a composition or extension of time to pay his debts. John R. Walker, a creditor, sought the appointment of a receiver. On August' 10th, the court denied the application, but authorized and empowered the conciliation commissioner to supervise the handling of the assets of the debtor; enjoined the debtor from making sale of any part of such assets without the written approval of the conciliation commissioner; and directed that the proceeds from any such sale be deposited with the clerk to abide the further orders of the court. A proposed composition or extension was rejected; the debtor thereafter filed an amended petition asking to be adjudged a bankrupt under section 75(s), 11 U.S.C.A. § 203; and on October 5th, an order of adjudication was entered. On December 4th, the referee entered an order appointing the conciliation commissioner as receiver to collect accounts. After an appraisement had been made, the first meeting of creditors was held on January 16, 1935, at which the insurance company submitted a bid for the land covered by the mortgage. It also filed a petition for the appointment of a receiver; and on the same day the referee appointed a trustee, being the person previously acting as receiver. The referee entered an order dated February 5th, rejecting the bid staying all foreclosure proceedings by the insurance company for a period of five years, and providing that the debtor retain possession of the premises during that period, all conditioned that he pay all water aassessments, canal service charges, and taxes theretofore or thereafter assessed before they became delinquent, and in addition a sum as annual rental equal to five per cent of the principal indebtedness due on the mortgage, such sum to be paid in semi-annual installments. The court below affirmed that action on review, but the bankrupt failed to make any payments on account of rental or taxes. On January 15, 1935, the court restrained the

insurance company from further proceeding in the foreclosure action pending in the state court, but the order was reversed on appeal. Central States Life Ins. Co. v. Chilton, 10 Cir., 77 F.2d 993. The court then vacated the order of the referee staying foreclosure proceedings, also the order of the court restraining further proceeding in the foreclosure action pending in the state court; and it authorized the insurance company to apply to the state court for the appointment of a receiver, and provided that upon the appointment and qualification of such receiver, he should be authorized to take possession and control of the mortgaged premises. The insurance company thereupon resumed exertion in the foreclosure action and on July 24th a receiver was appointed. He qualified, and accumulated $503.93 as revenue from the operation of the ranch.

After section 75 of the Bankruptcy Act was amended by the Act of August 28, 1935, 11 U.S.C.A. § 203, the court entered an order directing that all cases filed under the original section before it was held invalid and thereafter dismissed, be reinstated upon the docket as the record existed on the date of dismissal, and that such cases be referred to the respective conciliation commissioners having jurisdiction. On December 16th, without notice to the insurance company or Walker, the court entered an order staying all judicial proceedings against the bankrupt or his property for a period of three years; providing that during that period he retain possession of his property under the supervision and control of the court through the conciliation commissioner, conditioned that he pay a reasonable rental fixed at the rate of $4,100 per annum, payable semi-annually; that such rental be paid into the registry of the court and used (1) for the payment of taxes and upkeep of the property as ordered by the commissioner, and (2) the remainder to be distributed among the secured and unsecured creditors and applied on their claims as their interests may appear and as thereafter ordered from time to time by the commissioner; and further that any receiver then in charge of the property be divested of possession and the property returned to the debtor. On December 31, 1936, the court entered three orders. The first appointed Carlson as trustee, with all of the powers and duties of a trustee as provided by the Bankruptcy Act; the second vacated the previous orders restraining prosecution of the foreclosure action in the state court, and expressly authorized the insurance company to prosecute the action to conclusion; and the third directed the trustee to sell the real and personal property of the bankrupt, upon appraisal and notice. A further appraisal was had. The real property was valued at $46,000, and the personal property including hay and grain crops at $5,451. The trustee sold the real property to Walker for $550, subject to encumbrances and to the foreclosure action; and he sold the hay and grain for $2,214.12.

A decree was entered in the state court on February 15, 1937, finding that the amount due on the note and mortgage was $73,945.91, foreclosing the lien, and directing sale of the property. The sheriff sold it at public auction, and the insurance company purchased it for $64,500. The judgment, with accrued interest and costs, aggregated $74,646.76 at the time of the sale, thus leaving a deficiency of $10,146.76 for which judgment was subsequently entered against the Harvester Investment Company; but it is defunct and without any assets from which collection can be made. The general taxes against the ranch for the years 1933, 1934, 1935, 1936, and 1937 are unpaid, and they amount to approximately $2,280; and water charges in the approximate sum of $1,800 have accrued during the pendency of the proceeding in bankruptcy.

The trustee in the bankruptcy proceeding has in hand $3,393.60, including the $503.93 collected by the receiver in the state court, all of which represents revenue arising from the operation of the ranch. The insurance company filed its petition seeking to have that fund applied (1) to the payment of the taxes, and (2) to the deficiency due on the note and mortgage covering the land. The court denied the petition, and referred the matter to the conciliation commissioner for payment of the claims for compensation, fees, and expenses allowed or approved, and for the distribution of the remainder of the fund to the general creditors as their interests may appear. The insurance company appealed.

■ Section 75, as amended, 11 U.S.C.A. § 203, is an integral part of the Bankruptcy Act. Section 64a (11 U.S.C.A. § 104(a) provides that the trustee shall pay all taxes due and owing by the bankrupt to the United States, state, county, district, or municipality, in the order of priority set forth in subsection (b), provided that no order shall be made for the payment of a tax assessed against real estate in excess of the interest of the bankrupt therein, as determined by

the court. Payment of taxes is thus mandated, and it has been held that the trustee in an ordinary bankruptcy proceeding is under the duty to search for and pay taxes against the bankrupt estate. In re De Angeles, 10 Cir., 36 F.2d 218; Stanard v. Dayton, 8 Cir., 220 F. 441, modified 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190. The application of section 64a to a proceeding for reorganization under section 77B of the Act, 11 U.S.C.A. § 207, was clearly recognized in City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589. And payment of costs and expenses of harvesting out of the fund arising from the sale of a crop of grapes harvested on the land of a debtor under section 75 was quite recently sustained even though the land was subject to a past due mortgage and the crop was covered by a chattel mortgage which expressly required the mortgagor to cultivate, harvest, and deliver the crop to the mortgagee, without cost to the latter, for sale and application of the proceeds to the payment of the debt; it being said that the provisions of the section "look toward the maintenance of the farm as a going concern, and afford clear authority, in a proper case, for the continuance of the operations of the farm after the filing of a petition * * *." Adair v. Bank of America, 303 U.S. 350, 58 S.Ct. 594, 598, 82 L.Ed. 889. It seems clear that after payment of the necessary and reasonable costs and expenses of administration in the bankruptcy proceeding the taxes due by the bankrupt estate should first be paid out of the money in the hands of the trustee.

Respecting the excess, if any, after the allowances for such costs and expenses and the taxes have been paid, the mortgage upon the land expressly covered the rents, issues, and profits thereof; and it further provided that in case of default in the payment of any of the installments as they become due, or in the event of any other breach of the covenants and agreements contained therein, the mortgagee should be entitled without notice to the possession of the premises, and to receive all of the rents and profits therefrom; that upon the institution of foreclosure proceedings a receiver might be appointed with authority to take possession of the premises and of the rents, profits, crops, and issues therefrom. These provisions constituted a pledge of the rents, issues, and profits of the mortgaged premises. The bankrupt did not assume the debt and he is not personally liable for its payment; but he acquired the land subject to all of the provisions of the mortgage. The insurance company is not a creditor of the bankrupt, and it does not present a claim as such. It merely seeks to have the fund arising from the operation of the mortgaged premises applied, first to the payment of the taxes, and next to the deficiency upon the note and mortgage in accordance with the pledge contained in the mortgage. It does not assert that the bankrupt is indebted to it, or that it may have resort as a claimant to the general assets of his estate for the payment of the debt evidenced by the note and mortgage.

Ordinarily a mortgagee is not entitled to the rents and revenue derived from the operation of mortgaged premises until he has reduced the premises to his possession, or has caused the rents and revenues to be attached or otherwise sequestered, or has caused a receiver to be appointed with authority to take possession and to collect the rents and revenue. And it is usually held that until the mortgagee has taken one of these steps, the possession of the trustee in bankruptcy is that of the mortgagor, and for that reason the rents and revenue from the premises are applicable to debts due general creditors. But here the mortgagee was expressly authorized to take possession upon default, and to appropriate the rents, issues, and profits to payment of the debt; and the appointment of a receiver was authorized, upon institution of a foreclosure suit, with authority to take possession of the premises, and the rents, profits, crops, and issues therefrom. Four installments were in default at the time the bankrupt purchased the premises, and he subsequently made default in others. The insurance company instituted a foreclosure suit in July, 1934, and prayed for the appointment of a receiver. That amounted to a demand that the bankrupt surrender possession; but he circumvented the appointment of a receiver by the institution of the proceeding under section 75, supra, and the subsequent orders of restraint. In addition, the insurance company filed a petition in the bankruptcy proceeding in January, 1935, seeking the appointment of a receiver; and it was denied. But throughout the period during which the fund in controversy accrued, the mortgaged premises were in the possession of the receiver appointed by the state court with the consent and approval of the bankruptcy court, the trustee in bankruptcy, or the debtor under express authority of the bankruptcy court. And such possession of

the debtor was analogous to that of a receiver. Possession was judicially committed to him for the benefit of the insurance company as fully as though he were a receiver or trustee. Wright v. Vinton Branch, 300 U.S. 440, 466, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. Thus the property was under the control of a court of competent jurisdiction during the period in which the revenue in question accrued, not in the possession of the bankrupt in his own right. And the insurance company was not inactive. It asserted its right to the issues and profits, first when it sought the appointment of a receiver in the foreclosure action in the state court, and second when it prayed the bankruptcy court to make an appointment. It could not reasonably be expected to do more in the circumstances in respect to the sequestration of such issues and profits for application to its debt. In view of these facts, it would be inequitable to disregard the pledge by awarding the proceeds arising from the operation of the mortgaged premises to general creditors. Mortgage Loan Co. v. Livingston, 8 Cir., 45 F.2d 28; In re Wakey, 7 Cir., 50 F.2d 869, 75 A.L.R. 1521; Associated Co. v. Greenhut, 3 Cir., 66 F.2d 428; American Trust Co. v. England, 9 Cir., 84 F.2d 352.

Delay in filing the claim and other contentions are advanced in an effort to sustain the order, but they lack merit.

The order is reversed and the cause remanded for further proceedings not inconsistent with this opinion.