In re MORNING STAR RANCH
RESORTS, Debtor.

Michael Dean CHAUSSEE, Plaintiff,

v.

MORNING STAR RANCH RESORTS
COMPANY, Defendant.

Bankruptcy No. 86 B 7192 C.
Adv. No. 86 M 798.

United States Bankruptcy Court,
D. Colorado.

Sept. 17, 1986.

Joseph Genchi, Estes Park, Colo., for Morning Star Ranch Resorts Co.

Robert Duitch, Colorado Springs, Colo., for Michael Dean Chaussee.

## OPINION AND ORDER

CHARLES E. MATHESON, Bankruptcy Judge.

THIS MATTER comes before the Court on the Plaintiff's Motion for Issuance of a Temporary Restraining Order. The facts indicate that the Debtor owns a motel/resort operation in Estes Park, Colorado, which he purchased in the fall of 1985. In order to make the purchase the Debtor borrowed the sum of $250,000 from Mr. Michael Dean Chaussee ("Plaintiff"). That loan is payable, with interest at the rate of 21%, on or before September 30, 1986. At the time that the loan was taken out the Debtor pre-paid interest to the extent of $25,000, but has made no interest payments on the note for several months. The note to the Plaintiff is secured by a deed of trust on the resort property which contains a standard provision giving Plaintiff the right, upon default, to have a receiver appointed to collect the rents and profits of the property. That provision of the deed of trust then provides:

> All rents collected by lender or the receiver shall be applied, first, to payment of the costs of preservation and management of the Property, second, to payment due upon prior liens, and then to the same secured by this deed of trust.

The Debtor defaulted in his payments to the Plaintiff. Foreclosure was commenced and a state court receiver was appointed. Thereafter, the within Chapter 11 case was filed on August 7, 1986. Upon the filing of this case, the receivership was terminated and the property was returned to the Debtor.

Immediately after this case was filed the Plaintiff, through his counsel, filed a motion to dismiss or convert and for an order prohibiting use of cash collateral. A hearing was held before the Honorable Judge Patricia Clark, U.S. Bankruptcy Judge for the District of Colorado, who heard the matter, declined to hear the Debtor's motion to use cash collateral, and entered an order denying the Debtor the right to use cash collateral. Thereafter, Judge Clark recused herself from the case. The instant adversary proceeding was filed on September 3, 1986. The complaint, and the motion for a restraining order, allege that the Debtor has, in fact, continued to utilize cash collateral in violation of the mandate of Judge Clark. The Plaintiff seeks a turnover of all funds collected, both in the past and any rents or profits collected in the future, as well as damages for any misuse of cash collateral in the interim.

The evidence produced at the hearing on the temporary restraining order indicates that the Debtor corporation is owned by Mr. Robert C. Bialk. Mr. Bialk and his wife, as employees of the Debtor, have

operated the resort property since it was purchased by the Debtor. They have provided essentially all of the services at the resort, including the maid service, taking reservations, maintenance, laundry, etc., except for hiring temporary help when such was necessary. For this, they each received a salary of $500 a month. Since this case was filed, and notwithstanding Judge Clark's order, the Debtor has continued to operate, has continued to collect room charges from guests staying at the resort, and has paid operating expenses. No salaries have been paid to Mr. Bialk or his wife, however. The swimming pool has been closed and insurance has been obtained insuring the property. Mr. Bialk testified that the Debtor purchased the property for $585,000, that the Debtor has expended funds in repairing and improving the property and, in his estimate, the property is worth in excess of $750,000. The Debtor has no other source of funds to pay the cost of operation and maintain the property other than the income received from guests at the resort.

The motion for temporary restraining order which brought this matter on for hearing is prospective in that it seeks to control the future operations and cash proceeds derived by the Debtor from the operations of the property. The complaint also seeks damages for the Debtor's misuse of funds up to this point in time but that issue is not presently before the Court and will not be considered.

In essence, the complaint and temporary restraining order are the equivalent of a motion by the creditor under 11 U.S.C. § 363(e) to prohibit the use of property, including the rents to be derived from operations. By its nature, the motion raises the issue as to the Debtor's use of cash collateral on an ongoing basis. Thus even though the issue arises in this adversary proceeding, the Court is called upon to determine whether the Debtor in this case is entitled to continue to operate the resort, to collect the rents, and to pay the operating expenses of those operations.

The Plaintiff has given notice under 11 U.S.C. § 546(b) of his intent to claim an interest in the rents and profits and asserts that such rents and profits are cash collateral, subject to, and within the terms and conditions and within the meaning of, 11 U.S.C. § 363. In *In re Colter*, 46 B.R. 510 (Bankr.D.Colo.1984), Judge Gueck analyzed whether notice given under 11 U.S.C. § 546(b) perfects an inchoate lien in rents so that the lien on the rents becomes choate and the rents cash collateral governed by 11 U.S.C. § 363. Judge Gueck held that filing post-petition notice under 11 U.S.C. § 546(b) perfected the creditor's interest in rents and that rents received from a Chapter 11 debtor's real property were cash collateral subject to 11 U.S.C. § 363. Debtors appealed this decision to the District Court asserting that rents are not cash collateral and that they had the right to unfettered use of rents during the bankruptcy proceeding. In *Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008 (D.Colo.1985), Judge Matsch affirmed Judge Gueck's decision. Judge Matsch stated that the beneficiary of a deed of trust with an assignment of rents perfects his interest by giving post-petition notice under 11 U.S.C. § 546(b). He then held that rents in this case were cash collateral and could be used by the debtors only in conformance with 11 U.S.C. § 363, stating:

> Whether or not the condition of the property is such that restrictions on the use of the rents by the debtors is justified to protect the security of the mortgagee will be determined by the bankruptcy judge under Section 363, which is essentially equivalent to the determination made under § 38–39–112 C.R.S. *Id.* at 1011.

The state statute referred to above concerns the appointment of a receiver in a state action or proceeding to foreclose a mortgage or deed of trust, and the use of the rents collected from the property. Receivers are generally appointed when their services are necessary to preserve the estate until the Court can determine the rights of the litigants. As such, receivers

serve as officers of the Court. *Hart v. Ed-Ley Corp.*, 482 P.2d 421, 425 (Colo.App. 1971). Judge Matsch indicates in *Consolidated Capital Income Trust v. Colter, Inc., supra,* that the analysis necessary to the appointment of a receiver is essentially the same determination for conditioned use of cash collateral that must be made by the Bankruptcy Court under 11 U.S.C. § 363(e). Bankruptcy law refers to state property laws for such determination under authority set forth in a case decided under the Bankruptcy Act. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 27 L.Ed.2d 193 (1979). In *Butner,* the Supreme Court analyzed the relationship between state and federal law concerning property interests, particularly the interest of a mortgagee in rents earned by mortgaged property. The Court determined that absent an overriding federal interest, state laws should govern property interests. The Court rejected the assertion that there is an equitable basis for a uniform federal rule to afford mortgagees an automatic interest in rents as soon as a mortgagor filed for protection under the bankruptcy code. The Court stated:

> ... the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued. *Id.* at 54, 99 S.Ct. at 918.

This precedent is still applicable even though it analyzed a case decided under the Bankruptcy Act. *Matter of Village Properties, Ltd.,* 723 F.2d 441 (5th Cir.1984); *In re Colter, supra.* Thus, any matter arising in this Bankruptcy Court concerning security interests in rents and profits from Colorado properties must refer to and be limited by the protection granted those interests under Colorado law as the *situs* of the property. *Butner v. U.S., supra; Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

In Colorado, a mortgagee or assignee of rents who has been granted the right to collect rents and profits upon default in a security instrument has only an inchoate lien. It is only upon taking affirmative steps to perfect that lien that one secures a right to rents and profits. The perfection of the lien then dates from when the action is begun. *Megginson v. Hall,* 111 Colo. 104, 137 P.2d 411, 413 (Colo.1943); *Moncrieff v. Hare,* 38 Colo. 221, 87 P. 1082, 1085, 1088 (Colo.1906); *Application of Northwestern Mutual Life Ins. Co.,* 703 P.2d 1314, 1318 (Colo.App.1985). Such affirmative steps include taking possession of the property, causing rents to be sequestered, or seeking appointment of a receiver pursuant to C.R.S. §§ 38–39–112, 38–39–113 (1982). *Consolidated Capital Income Trust v. Colter, Inc., supra* at 1010; *Van Schaick v. McCarthy,* 116 F.2d 987, 992 (10th Cir.1941); *Central States Life Insurance Co. v. Carlson,* 98 F.2d 102, 105 (10th Cir.1938), *In re Colter, supra* at 512; *Fisher v. Norman Apartments,* 101 Colo. 173, 72 P.2d 1092, 1097 (Colo.1937); *Moncrieff v. Hare, supra* at 1085; *Application of Northwestern Mutual Life Ins. Co., supra* at 105.

A receiver is appointed upon application if an action or proceeding has been commenced to foreclose the mortgage or trust deed and at any time prior to sale if the security is inadequate or in danger of becoming inadequate, C.R.S. § 38–39–112(1) (1982). A receiver can also be appointed even during the redemption period following foreclosure sale if the owner fails to maintain the property so as to commit waste, C.R.S. § 38–39–113(1) (1982). *Schwab v. Martin,* 165 Colo. 547, 441 P.2d 17 (Colo.1968); *Phillips v. Webster,* 162 Colo. 315, 426 P.2d 774 (Colo.1967); *French v. Jarvis,* 246 P. 1032 (Colo.1926); *Moncrieff v. Hare, supra.* If the property is abandoned, the lien holder or purchaser may take possession but is subject to the same duties and liabilities for care of the premises and for application of rents and profits as would be a receiver. C.R.S. §§ 38–39–112(2), 38–39–113(2) (1982); *Ginsberg v. Bennett,* 101 Colo. 121, 71 P.2d 419 (Colo.1937); *Martinez v. Continental Enterprises,* 697 P.2d 789 (Colo.App.1984).

An appointed receiver has the duty to take possession and manage the property.

From rentals received, the receiver must preserve, protect and maintain the property. The receiver is to bring current delinquent taxes, pay for insurance and repairs, and protect title to the property. C.R.S. § 38–30–113 (1982); *Martinez v. Continental Enterprises, supra* at 793; *Hart v. Ed-Ley Corp., supra* at 425. After payment of such expenses, the receiver is to keep remaining funds for distribution to the party determined by the Court to be entitled to them. *Hitz v. Jenks,* 123 U.S. 297, 8 S.Ct. 143, 31 L.Ed. 156 (1887). The receiver's duties continue through the redemption period until the deed issues and title is passed either back to the owner who had redeemed or to another party through the foreclosure process. *Ginsberg v. Bennett, supra* at 424.

■ When bankruptcy intervenes the property of the debtor becomes subject to the jurisdiction of this Court and the rights of the lender are at least suspended by reason of the automatic stay under 11 U.S.C. § 362. The stay deprives the lender of the right to have a receiver appointed and, but for the operation of 11 U.S.C. § 546(b), would deprive the lender of the opportunity to perfect his inchoate interest in the rents and profits of the real property. The *Colter* decision recognizes that a notice filed under 11 U.S.C. § 546(b) serves the same purpose as the appointment of a state court receiver absent the advent of bankruptcy. *Colter* does not serve to improve the lender's position. Thus, upon the filing of the § 546(b) notice, the lender does not become entitled to claim a right to all of the rents collected by the debtor. The lender, instead, is at best entitled to the protection to which he would have been entitled had a receiver been appointed.

It is clear in this case that there would be no proceeds to fight over if the property is not operated. If a receiver were to operate the Debtor's property, he would be required to pay the operating expenses. Indeed, that is precisely what the deed of trust in this case requires. He would also be required to pay for the preservation of the property and that also is what is speci-

fied by the deed of trust. Costs of management and preservation would normally include costs for utilities, telephone service, laundry service, maid service, cleaning service, groundskeeping, supplies and the costs of employees to cover such things as reservations, check-in, cashiers, accounting, etc. Further, under normal receiverships, the receiver would be paid a receiver's fee. He might, as well, hire a managing company to manage the property and pay a management fee. He might also engage accountants or attorneys in appropriate circumstances and pay their fees and expenses. All of those costs would come out of the rents received before any monies would be paid over to the lender.

■ In essence nothing is different when a Chapter 11 is commenced and a 546(b) notice is filed. The debtor is a fiduciary and operates the property as a fiduciary for the parties in interest. He has obligations to operate the property in good fashion, to pay the expenses of operation and the costs of maintenance, to preserve and protect the property, and to account for the monies received and the expenses paid. The Debtor cannot utilize the net funds remaining to pay the ordinary costs of administering the bankruptcy estate, for those are expenses that are imposed upon the debtor and not upon the secured party. Thus absent compliance with 11 U.S.C. 363(c)(2) the debtor should not be in a position to use the funds to pay the attorney for the estate, to pay for accounting services for the estate, or to pay other expenses of administration of the Chapter 11 estate unrelated to the operation, care, preservation and maintenance of the property.

■ One might argue that there is no "cash collateral" until all of the expenses are accounted for and that only what is left is cash collateral in which the lender has an interest. Conversely the lender can argue that he has an interest in all of the cash, subject only to the payment of reasonable operating and preservation expenses which must be strictly accounted for. Whichever approach is used, the ultimate result is the same. The filing of the notice under 11

U.S.C. § 546(b) served, in this case, to protect the Plaintiff's inchoate interest in the rents and profits derived by the Debtor's operation of its resort. Such perfection does not give the Plaintiff an absolute right to all income received by the Debtor. The Debtor is entitled to use the income to pay normal operating expenses. At the same time, it is of paramount importance that the Plaintiff be in a position to monitor the operations and be advised of the extent of funds received and the particularity of expenses paid. In this manner the ongoing interests of the Plaintiff are and can continue to be adequately protected.

Having considered the evidence and pursuant to the rulings made and conclusions drawn herein,

IT IS HEREBY ORDERED:

1. A preliminary injunction is hereby entered enjoining and restraining the Debtor from using or disposing of the rents, profits and other proceeds derived from the operation of the resort property owned by the Debtor and encumbered in favor of the Plaintiff, except in accordance with the provisions of this order.

2. The Debtor, as Debtor-in-possession, may continue to operate the property and to rent rooms and provide resort services in the ordinary course of its business and to collect the rents therefrom.

3. All income derived from the operation of the property shall be deposited in a Debtor-in-possession account and not comingled with any other funds of the Debtor derived from any source whatsoever.

4. Out of the funds received the Debtor may pay the ordinary and necessary expenses of operation of the property and the costs of care, preservation and maintenance which shall include the following: the costs of propane for heating, electricity, water, sewer and telephone charges; maid service to the extent contracted from non-affiliated employees; laundry expense, cleaning, upkeep, maintenance and repairs; insurance; purchase of necessary supplies; and general landscaping and groundskeeping expense. The Debtor may also pay salaries to Mr. and Mrs. Bialk in a sum not to exceed $500.00 per month each, and the Debtor may also reimburse them for their use of their personal automobile on a mileage basis equivalent to that allowed for deduction under the Internal Revenue Code upon submission to the Debtor of periodic statements of mileage expended and the purposes therefor.

5. To the extent any funds remain, after payment of the aforesaid expenses, such funds shall be retained in the Debtor-in-possession account and shall not be expended for any purposes whatsoever except upon further order of this Court. In particular, and not by way of limitation, no funds shall be expended out of said account for fees, costs or expenses of attorneys, accountants or appraisers acting for and on behalf of the Debtor, nor for capital improvements to the property.

6. On or before September 15, 1986, the Debtors shall deliver to counsel for the Plaintiff herein, at counsel's regular business office in Colorado Springs, Colorado, a copy of the initial report filed with the United States Trustee's office on that date, and such supplements thereto as shall be necessary to account to the Plaintiff for all funds received and all funds disbursed through the month of August by the Debtor-in-possession. For the two-week period commencing September 1, 1986, and for every two weeks thereafter, the Debtor shall deliver to the Plaintiff, at the office of Plaintiff's counsel, within ten days after the end of each two-week period, copies of all deposit slips; copies of all reservation cards sufficient to show the identity of all persons registered as paying guests at the resort, the period of time of their stay and the charges therefor; a schedule on a daily basis of all income received by check, cash or credit card; and a schedule of all checks written out of the Debtor-in-possession account. No funds shall be expended by the Debtor other than by check from the Debtor-in-possession account. In addition to the foregoing the Debtor will provide to the Plaintiff on an ongoing and timely basis copies of all reports filed with the United

States Trustee's office and a copy of each monthly bank statement on the Debtor-in-possession account.