### In re LUCRE MANAGEMENT GROUP, LLC, Debtor.

### Lucre Management Group, LLC Plaintiff/Appellant,

### v.

### Schempp Real Estate, LLC Defendant/Appellee.

### No. CIV.A. 02–K–1887.

United States District Court, D. Colorado.

Feb. 4, 2003.

Richard A. Marsh, Samson, Pipis & Marsh, LLC, Longmont, CO, for appellant.

Cynthia T. Kennedy, Kennedy & Kennedy, P.C., Lafayette, CO, for appellee.

## AMENDED MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Lucre Management Group, LLC, the debtor, appeals under 28 U.S.C. § 158(a) or (b) from the September 23, 2002 order of the bankruptcy court finding it in contempt and ordering payment of certain monies. Two principal issues are presented on appeal: 1) whether due process requirements for imposing sanctions were met in this case; and 2) whether adequate notice of possible sanctions was provided to the debtor.[1]

During bankruptcy proceedings, the court ordered Lucre to comply with the holding of *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Colo.1986), in allocating rents received from its properties as debtor in possession. Though dismissing the case, the bankruptcy court retained jurisdiction to entertain any Motion for Order to Show Cause regarding the debtor's compliance with the court's orders. It further ordered that Lucre provide Schempp Real Estate, LLC with an accounting of rents received and how the monies were applied from March 1 through June 13, 2002.

Shortly thereafter, Schempp filed a Motion For Entry of Order to Show Cause why debtor should not be held in contempt with regard to these payments. Counsel for Lucre timely filed a responsive brief. The court then issued a Notice of Hearing regarding the Motion for Order to Show Cause. At the conclusion of the hearing, the court found that Lucre's use of certain monies during the bankruptcy constituted contempt of its order requiring debtor to comply with *In re Morning Star.* In its subsequent written order, the bankruptcy court ordered the debtor pay to the receiver the sum of $545.34 plus 8% interest on or before October 3, 2002. If it failed to pay the amount due by this date, the court ordered that an additional $1,000 sanction would be payable as well.

■■■■ An initial question, largely bungled by the parties, is whether the bankruptcy court order was for civil or criminal contempt. The answer to this question turns on the "character and purpose" of

---

1. The appeal also raises issues concerning: 1) whether the finding of contempt was supported by clear and convincing evidence; and 2) whether the bankruptcy court order incorporating *In re Morning Star* was definite enough to support a finding of contempt. Neither issue has merit.

the sanction involved. *See Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)).[2] The basic distinction is that civil contempt sanctions are designed to compel compliance with a court order and criminal contempt is designed to punish disobedience to a court order. Civil contempt sanctions are considered coercive and avoidable through obedience. *Id.; see also FTC v. Kuykendall,* 312 F.3d 1329, 1337 (10th Cir. 2002). Thus, a contempt sanction is civil if it is remedial and for the benefit of the complainant. *Id.* Under these circumstances, the contemnor is able to purge the contempt by committing an affirmative act, and thus "carries the keys of his prison in his own pocket." *Bagwell,* 512 U.S. at 828, 114 S.Ct. 2552.

█ In contrast, criminal contempt consists of the retrospective imposition of a sanction for a completed act of disobedience in order to vindicate the authority of the court. *See Bagwell,* 512 U.S. at 828, 114 S.Ct. 2552; *In re Aspen Limousine Service, Inc.,* 198 B.R. 341, 350 (D.Colo. 1996); *see also Kuykendall,* 312 F.3d at 1337. Thus, a flat, unconditional fine announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance. *Bagwell,* 512 U.S. at 829, 114 S.Ct. 2552. The imposition of additional penalties for failure timely to satisfy the sanction does not cause a metamorphosis in which the nature of the contempt is changed from criminal to civil.

█ The distinction between civil and criminal contempt sanctions determines what procedural protections are due before imposition of a particular penalty. *See Bagwell,* 512 U.S. at 830–31, 114 S.Ct. 2552. Because civil contempt sanctions are viewed as non-punitive and avoidable, the contemnor is afforded fewer procedural protections. *Bagwell,* 512 U.S. at 831, 114 S.Ct. 2552. Thus, the court may impose civil contempt sanctions in an ordinary civil proceeding upon notice and an opportunity to be heard. *Id.* at 827, 114 S.Ct. 2552. Neither a jury trial nor proof beyond a reasonable doubt is required. *Id.* at 827, 114 S.Ct. 2552. To the extent that such contempts take on a punitive character, however, some criminal procedural protections are implicated. *Id.* at 831, 114 S.Ct. 2552.

█ The Constitution requires certain protections before imposing criminal penalties. *Id.* at 826, 114 S.Ct. 2552 (quoting *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968)). For serious criminal sanctions involving imprisonment of more than six months or the imposition of substantial fines, these protections include the right to a jury trial. *See id.* at 838, 114 S.Ct. 2552 (quoting *Bloom,* 391 U.S. at 210, 88 S.Ct. 1477). In bankruptcy proceedings, notice in writing and a statement of the essential facts constituting the contempt charged is also required. *See* Fed. R. Bankr.P. 9020(b).

█ At the other end of the criminal contempt spectrum is petty contempt. Like other petty offenses, petty contempt may be found without a jury trial. *Bagwell* 512 U.S. at 838, 114 S.Ct. 2552 (quoting *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974)). Petty contempt includes instances in which the

**2.** Numerous scholars have criticized the traditional distinction between civil and criminal contempt as unworkable, conceptually unclear, and exceedingly difficult to apply. *See, e.g.,* Earl C. Dudley, Getting beyond the Civil/Criminal Distinction: A New Approach to the Regulation of Indirect Contempts, 79 Va. L.Rev. 1025, 1033 (1993).

penalty imposed does not exceed a fine of more than $5,000 for an individual and $10,000 for persons other than individuals. *See Bagwell,* 512 U.S. at 838, 114 S.Ct. 2552 (quoting 18 U.S.C. § 1(3) (repealed 1984)).

 The character of the contempt sanction in the present case is clearly and indisputably punitive. Although Lucre could have avoided the $1,000 fine through an affirmative act (by repaying the $545.34 on time), the court issued the order of contempt based on a completed act of disobedience. The court was not attempting to coerce compliance with its previous order. Lucre had already violated the court's order to comply with *In re Morning Star,* and the contempt sanction was based on this violation. Indeed, if appellant or its counsel had any question at all about the requirements of *In re Morning Star,* it or he could have requested clarification or moved in advance of its *sua sponte* action for authorization to make the patently prohibited expenditures.

 A major concern in distinguishing between civil and criminal contempt is that an improper characterization may deprive the contemnor of due process rights. This concern lessens, however, as the nature of the conduct and the proportionality of the sanction diminish. Given the conduct in the present case, the distinction is inconsequential. The right to a jury trial and other procedural protections apply only to serious criminal contempt sanctions. The processes afforded a contemnor for a "petty" criminal contempt fine are similar to those afforded a contemnor for a civil contempt fine not involving a "complex" injunction. *See generally Kuykendall,* 312 F.3d at 1341; *Bagwell,* 512 U.S. at 838, 114 S.Ct. 2552. Where, as here, the party has notice of its allegedly contumacious conduct and the offense is minor rather than egregious, the absence

of a specific identification of the contempt as civil or criminal does not deprive the party of due process. *See Aspen Limousine,* 198 B.R. at 351.

Lucre also had sufficient notice of its contumacious conduct to permit the court to impose criminal contempt sanctions. The Motion for Order to Show Cause sufficiently stated the essential facts constituting the contempt. Lucre had actual notice of what these charges were, and was afforded the opportunity to be heard in a responsive pleading to the motion. A hearing was held on that motion before which notice was issued.

The bankruptcy court was not required to describe the contempt as civil or criminal. Indeed, the nature of the proceeding should have been obvious to even casual observation. Given the sanction imposed, all necessary procedures were met. The relatively small amount of the fine is indicative of the nature of the contempt. The violation of the order did not intrude upon the orderly administration of the court's business, but still it could not go unnoticed. By taking the gain out of the prohibited conduct, the court imposed a wise penalty which amounts to an admonition that court orders are meant to be taken seriously.

The decision of the bankruptcy court is affirmed. This appeal is utterly without merit as evidenced by the appellant's failure to grasp fundamental issues. The appellee was required to suffer additional costs as the result of appellant's whimsy and therefore shall have judgment for its costs, including attorney fees, incurred in this appeal. The case is remanded to the bankruptcy court for a determination of those costs and fees and entry of judgment in accordance therewith.