In re M. VICKERS, LTD., a Colorado Limited Partnership, Debtor.

SUPER 8 MOTELS, INC., Appellant,

v.

M. VICKERS, LTD., et al., Appellees.

Bankruptcy No. 87 B 10355J.
Civ. A. No. 88-K-178.

United States District Court, D. Colorado.

Feb. 26, 1990.

Bruce Anderson, Denver, Colo., for Super 8 Motels, Inc.

Joel Thompson, Steamboat Springs, Colo., for Alpine Federal Sav. & Loan.

Paul J. Lewis, Denver, Colo., for H.F.C. Commercial Realty, Inc.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this appeal is whether the profits derived from the motel business are "rents," and therefore an interest in real property, or "accounts," and therefore an interest in personalty. Super 8 Motels, Inc. appeals the bankruptcy court's determination that motel profits are rents and that Super 8 did not properly perfect its security interest in such rents although it had filed a financing statement encumbering the contract rights, accounts receivable and bank accounts of the debtor, M. Vickers, Ltd. The majority of courts addressing this issue have concluded that such profits are personalty and not an interest in real property. Therefore, I reverse.

### I. *Facts.*

The facts of this case are undisputed. In 1983 and 1985, Mr. and Mrs. Burton Vickers purchased three motels located in Lamar, Gunnison, and Canon City, Colorado. In May, 1985, Mr. Vickers obtained a loan from H.F.C. Commercial Realty, Inc. The loan was secured by a Deed of Trust and an Assignment of Rents for each of the motel properties. H.F.C. also took a security interest in the structures, chattels, rents and profits of the properties. The Deeds of Trust, the Assignments and the UCC-1 financing statements were filed on May 6 and May 7, 1989 with the County Recorders in the respective counties where the motels were located.

In September, 1985, Mr. Vickers obtained another loan from Super 8 Motels, Inc. As collateral for this loan, Super 8 took a security interest in the contract rights, accounts receivable, and bank accounts of the three motels. Super 8 filed its UCC-1 financing statements to this effect on September 16 and 17, 1989 with the respective County Recorders and with the Colorado Secretary of State.

Mr. Vickers obtained still another loan in February, 1986 from the Mid-America Mortgage Company. As a condition to this financing, Mid-America required the Vickers to transfer their interest in the motels

to the debtor, M. Vickers, Ltd., a limited partnership of which Mr. Vickers was the sole general partner. The partnership then executed a Second Deed of Trust and Security Agreement on the motel properties and an Assignment of Rents. These documents were filed with the County Recorders on February 10, 1986. UCC–1 financing statements covering the rents and profits of the motels were filed thereafter. On September 30, 1986, Mid–America transferred its interest in the Vickers' loan to the Alpine Federal Savings and Loan Association.

On September 1, 1987, M. Vickers, Ltd. filed for bankruptcy. H.F.C. and Alpine had already initiated foreclosure proceedings, and both creditors requested the appointment of a receiver. (Vickers and H.F.C. then entered into a formal debt restructuring agreement before the bankruptcy, and H.F.C. was prepared to dismiss its foreclosure proceedings at the time the petition was filed.) On September 4, 1987, M. Vickers, Ltd. filed a motion for use of cash collateral contained in a bank account designated "M.V.L/Colorado Cash Collateral Account." The funds in this account, $85,853.26, were derived solely from the profits generated by the motels.

The bankruptcy court held a hearing on this motion on September 28, 1987, after which the court entered an emergency order authorizing M. Vickers, Ltd. to use the cash collateral, provided that it made adequate protection payments to H.F.C. The order was to become final if no other creditors objected by a given date. Two creditors, Alpine and Super 8, filed timely objections to the emergency order.[1]

Super 8 claimed that its interest in the funds in the account was superior to H.F. C.'s because the funds in the account could not be secured by H.F.C.'s assignment of rents since, the profits derived from the hotel business are "accounts" under UCC and not "rents." Consequently, since Super 8 properly perfected its interest in accounts of M. Vickers, Ltd. by filing a UCC–1 financing statement with the Secretary of State, it had priority. Alternatively, Super 8 argued that the funds could be considered both "rents" and "accounts" and that, even if H.F.C. could have perfected its interest through foreclosure of its recorded assignment of rents, Super 8 perfected its interest first.[2] The bankruptcy court rejected both of Super 8's arguments, finding that the funds in the accounts were rents and that H.F.C. had the priority interest. Super 8 now appeals. Since the facts in this case are undisputed and the issues presented are legal in nature, my review is *de novo*. *First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987).

## II. *Issues.*

### A. *Characterization of Motel Profits.*

The issue of which secured creditor has the priority security interest in the debtor's cash collateral account is controlled by Colorado law, since the situs of the account is Colorado. *Butner v. United States*, 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–19, 59 L.Ed.2d 136 (1979); *Chaussee v. Morning Star Ranch Resorts Co. (In re Morning*

**1.** Alpine objected on the basis that it held a superior lien to H.F.C. on the monies in the account through its assignment of rents. Under Colorado law, a lien on rents arising from an assignment of rents is not perfected until the creditor has taken certain affirmative steps in foreclosing its interest. *See generally In re Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. 1008, 1010–11 (D.Colo.1985). Alpine claimed that because H.F.C. named Mr. & Mrs. Vickers in its foreclosure action, and not M. Vickers, Ltd. (which actually owned the motels), H.F.C.'s attempt to perfect its interest in the rents was inadequate. Since Alpine named the proper party in its foreclosure proceedings, Alpine claims that it perfected first and its interest in the account was superior. The bankruptcy court ruled against Alpine, finding that H.F.C.

had taken a substantial step in perfecting its interest before Alpine did, even though H.F.C. had named the wrong parties, and that, but for the bankruptcy, H.F.C. could have amended its pleadings to name the proper party. Alpine does not appeal.

**2.** Super 8's second argument has little merit. Article 9 of the UCC excludes by definition interests in real property. Colo.Rev.Stat. § 4–9–104(j) (1974). The bankruptcy court correctly rejected Super 8's argument that the profits in this case could be both an interest in realty and personalty because such an interpretation would effectively nullify the provisions of § 4–9–104(j). *See* Bankruptcy Court Order at 11–12.

*Star Ranch Resorts)*, 64 B.R. 818, 821 (Bankr.D.Colo.1986). Under § 9–104(j) of the Colorado Uniform Commercial Code (UCC), Colo.Rev.Stat. § 4–9–104(j) (1974), "an interest in or a lien on real estate, including a lease or rents thereunder" is excluded from the provisions of Article 9 of the UCC. Hence, "if the money in the account represents an interest in real estate, in the form of rents, then any security interest in the funds under Article 9 of the Colorado Commercial Code (U.C.C.) is invalid. Alternatively, if the account balance represents the proceeds of accounts receivable, then the funds are personalty and not properly the subject of an assignment of rents." Bankruptcy Court Order at 7.[3]

The term "rent" is not defined in the U.C.C., and there is no Colorado statute or case law directly construing this term in the context of Article 9 of the UCC. Nevertheless, the bankruptcy court concluded that motel profits are "rents" under Colorado law. The court relied primarily on three cases to reach this conclusion. In *Peterson v. Oklahoma City Housing Authority*, 545 F.2d 1270, 1274 (10th Cir. 1976), the Tenth Circuit defined the term "rent" as "compensation or income which the owner of land receives from a tenant for the use or occupation of the land." *Peterson* involved an attempted class action by the tenants in a low-rent housing project who were contesting the City's requirement that they provide security deposits. *Peterson* is not helpful in this context, since it involved a clear-cut landlord-tenant relationship, and not the characterization of motel proceeds.

The second case cited by the bankruptcy court was *Phillips v. Webster*, 162 Colo. 315, 426 P.2d 774 (1967). In *Phillips*, the issues before the court were whether a receiver was properly appointed for a motel property going through foreclosure, whether the receiver's final report should have been approved by the court and how the net profits generated during the receivership should be distributed. On the final issue, I differ with the bankruptcy court's

interpretation of the holding of this case. The bankruptcy court stated,

> The Colorado court did not directly address the proper characterization of the payments collected from the motel patrons. It did, however, approve the trial court's disposition of the payments collected during the receivership in which the trial court awarded the payment to the *creditor that held the assignment of rents.* Hence the Colorado court apparently considered the payments received from motel patrons to be rents arising from the use of real property and therefore subject to an assignment of rents.

Bankruptcy Court Order at 8–9. Contrary to the bankruptcy court's reading of *Phillips*, the Colorado court awarded the profits to the *record owner* of the property after the foreclosure, Mr. Phillips, and not to the creditors/mortgagees, Mr. and Mrs. Webster. *See* 426 P.2d at 777, 778. Thus, the court in *Phillips* did *not* implicitly recognize that motel profits could be subject to an assignment of rents, and in any event, did not address the merits of the issue in this case.

The third case upon which the bankruptcy court relied is *Chaussee v. Morning Star Ranch Resorts Co. (In re Morning Star Ranch Resorts)*, 64 B.R. 818 (Bankr. D.Colo.1986). In *Morning Star Ranch*, a lender with a deed of trust on the debtor's motel property (which included an assignment of rents clause) moved for a temporary restraining order to prevent the debtor from using the profits generated by the motel. The bankruptcy court in *Morning Star Ranch* reviewed applicable bankruptcy and Colorado law regarding the perfection of an assignment of rents post-bankruptcy. The court concluded that the creditor's filing of a § 546(b) notice to claim an interest in rents and profits was the equivalent of a motion for an appointment of a receiver, that the creditor had therefore perfected his interest in such rents, and that the creditor was entitled to a temporary restraining order limiting the debtor's

---

**3.** "Accounts" are defined in the UCC as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." Colo.Rev.Stat. § 4–9–106 (Supp.1989).

use of the cash collateral. *Id.* at 820–22. It is clear that the *Morning Star Ranch* court simply assumed that the profits generated by the hotel were subject to the assignment of rents, without considering whether they were an interest in real or personal property. *Morning Star Ranch* is therefore of limited assistance in answering this question.

In addition to the three cases discussed above, the bankruptcy court further noted that "[t]he case law of Colorado is also replete with instances in which courts have referred to funds generated by motels as 'rents.'" Bankruptcy Court Order at 10. True, the cases cited by the bankruptcy court do refer to the fees charged by hotels as "rents," but do so in contexts unrelated to the issue at bar. *See People v. Sprengel*, 176 Colo. 277, 490 P.2d 65 (1971) (challenge to motel signage law); *City of Englewood v. Wright*, 147 Colo. 537, 364 P.2d 569 (1961) (action to enjoin enforcement of license tax on rental of commercial or residential realty); *Colorado Arlberg Club v. Board of Assessment Appeals*, 719 P.2d 371 (Colo.Ct.App.1986) (nonprofit club contesting tax assessment of property and classification of property as commercial rather than residential), *rev'd*, 762 P.2d 146 (1988). The bankruptcy court additionally observed that certain Colorado statutes refer to hotel fees as "rents." However, in these statutes, the term is used as a verb to describe the action of providing shelter, and not as a noun to describe the fees for providing such shelter. *See, e.g.* Colo.Rev. Stat. § 38–20–102(2) (1982) ("keeper of hotel ... or any other person who *rents* temporarily shelter" entitled to lien for amount due for lodging) (emphasis added); *id.* § 12–44–101(3) (1985) (statute dealing with public accommodations defining "public establishment" to include "any establishment leasing or *renting* overnight sleeping accommodations"). A more recently enacted statute defines the term "hotel facility" as "an establishment engaged in the business of *furnishing* overnight room accommodations primarily for transient persons," and refers to the fees charged by hotel facilities as "rates." *Id.* §§ 18–14–102, 18–14–103 (1986).

Since the bankruptcy court's ruling in this case, there has been one additional Colorado case which has more directly addressed the characterization of hotel charges. In *Investment Hotel Properties, Ltd. v. City of Colorado Springs*, 781 P.2d 113, 115 (Colo.App.1989), the purchaser of a hotel appealed the district court's denial of its claim for a sales tax refund from the City of Colorado Springs. The purchaser contended that the items it bought to furnish guest rooms in the hotel were exempt from taxation under the City's tax code because the items were for taxable resale to guests. The Colorado Court of Appeals agreed and reversed the district court.

In order to determine whether the exemption was applicable, the court was required to consider "whether the [hotel's] room rental is a taxable sale." *Id.* at 114. Under the City's tax code, a retail sale includes "'[a]ny sale, purchase, lease, rental or grant of license to use tangible personal property, or taxable services within the City.'" *Id.* at 115. The Colorado Court of Appeals then concluded that

> under the above provisions of the Colorado Springs City Code, the Hotel's rental of its guest rooms constitutes a resale of its *tangible personal property*. The sales tax is imposed on the rental of the Hotel's rooms, and therefore, the original purchase must be exempt from tax under the wholesale exemption provision.

*Id.*

Several federal courts have addressed the characterization of hotel profits under the laws of other states. The leading case in this area is *United States v. PS Hotel Corp.*, 404 F.Supp. 1188 (E.D.Mo.), *aff'd*, 527 F.2d 500 (8th Cir.1975). The issue in *PS Hotel Corp.* was very similar to the case at bar. Two creditors claimed that they had a priority interest in the profits of the hotel. One claimed its interest under an assignment of rents clause in a lease, and the other under an Article 9 financing statement covering accounts receivable. In holding for the Article 9 secured creditor, the court stated:

> Section 400.9–104 [of the Missouri Commercial Code] excludes from the Secured

Transactions Article various listed transactions, one of which is "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder."

Defendants have cited us to no case which construes this section, particularly as applied to a pledge of accounts receivable of a motel or hotel business to secure payments due under a lease. In our judgment, the statutory exclusion was not intended to apply to such accounts receivable, and the language of the statute cannot reasonably be construed to include them. This case does not involve an instrument conveying an interest in or lien on real estate. And as concerns the words "rents thereunder," what is referred to are the rents payable to the lessor under the provisions of a lease, not charges made by the lessee for services it provides to its patrons, even though those services include furnishing rooms in the leased premises for the use of its guests. Hence, the mere fact that the lease and lease amendment [containing the assignment of rents clause] were recorded as instruments affecting real estate does not affect the priority of plaintiff's security interest in the accounts receivable.

*Id.* at 1192. The Eighth Circuit then affirmed this decision with little discussion of its merits. 527 F.2d at 501.

Since *PS Hotel Corp.*, at least four other courts have addressed this question. Each has concluded that hotel room charges are not rents, and that these charges are accounts which are secured under Article 9 of the UCC. For example, in *Victor Savings & Loan Association v. Grimm (In re Greater Atlantic & Pacific Investment Group, Inc.)*, 88 B.R. 356, 359 (Bankr.N.D. Okla.1988) (citations omitted), the court reasoned,

As a general rule, "... guests in a hotel ... are mere licensees and not tenants, and ... they have only a personal contract and acquire no interest in realty ... the relation is not that of landlord and tenant, for, notwithstanding the guest's occupancy, it is the house of the innkeeper[.]" It follows that a hotel guest's

payment to the innkeeper for lodging is in the nature of a payment under contract or on account, i.e., an "account receivable."

At common law, "rents" are "something which a tenant renders out of the profits of the land which he enjoys[.]" Since motel guests have no interest in motel realty, guests do not, strictly speaking, pay "rent." ... Payments by motel guests resemble payments under contract or on account much more nearly than lease payments or "rent." No reason appears why the contractual term "rent" should be read so broadly as to include "accounts receivable."

Although *PS Hotel Corp.* and *In re Greater Atlantic* were decided under Missouri law, the common-law principles espoused in these cases apply here. *See also Investment Hotel Properties Ltd. v. New West Federal Savings & Loan Assoc. (In re Investment Hotel Properties, Ltd.)*, 109 B.R. 990 (Bankr.D.Colo.1990) (bankruptcy case decided in District of Colorado applying *PS Hotel* and *In re Greater Atlantic* under Missouri law). The same conclusion has been reached by courts applying California and Nebraska state law. *See Kearney Hotel Partners v. Richardson (In re Kearney Hotel Partners)*, 92 B.R. 95, 99 (Bankr.S.D.N.Y.1988) (decided under Nebraska state law); *Burton Co. v. Le Parc Assocs. (In re Ashkenazy Enters., Inc.)*, 94 B.R. 645, 647 (Bankr.C.D.Cal.1986) (decided under California law). In *Ashkenazy*, the court was in part persuaded by a California statute which defines the charges made for rooms as "rates" and not "rents." As noted above, Colorado law does the same.

The bankruptcy court attempted to distinguish *PS Hotel* by noting that the hotel in that case "provided patrons with food and liquor in addition to providing rooms.... In the case at bar the Debtor's motels provide patrons with rooms and access to vending machines only. The account balance is composed solely of room revenues and does not include any vending machine revenue." Bankruptcy Court Order at 7. To rely on this kind of distinction

in other cases would have absurd results. Any time a creditor wished to secure an interest in hotel room rental profits as collateral, it would be required to assess the level of services provided by the hotel. If the hotel provided many services other than simply letting rooms, the creditor would file under Article 9. If few services were provided, the creditor would record an assignment of rents. But in the lacuna in between, the creditor could never be certain what method to use to secure his interest.

The more practical approach is a bright-line rule. The only cases which have directly considered this issue have concluded that motel profits are personalty, and may be secured by an Article 9 financing statement. While the question is dependant on state law, there is little indication that Colorado state law differs significantly from the law of the states under which other courts have ruled. Furthermore, the recent decision by the Colorado Court of Appeals in *Investment Hotel Properties, Ltd. v. City of Colorado Springs* provides a strong indication that the rental of guest rooms is considered personalty under Colorado law as well. Consequently, Super 8's perfected security interest in the accounts receivable and contract rights of M. Vickers takes priority over H.F.C.'s interest under the assignment of rents since it was properly perfected by filing with the Secretary of State. *See* Colo.Rev.Stat. § 4-9-401 (1974). Likewise, the description of Super 8's security interest as "contract rights, accounts receivable and bank accounts" was sufficiently specific to give notice to other creditors of its interest. *See id.* § 4-9-402(1) (Supp.1989). The decision of the bankruptcy court is REVERSED.