The **GREAT–WEST LIFE ASSURANCE COMPANY, a Canadian corporation; and Walter Isenberg, Receiver, Plaintiff–Appellee,**

v.

**RAINTREE INN, a California limited partnership; and Ronald W. Baumgarten, Defendants–Appellants.**

No. 90CA1965.

Colorado Court of Appeals, Div. I.

April 23, 1992.

Rehearing Denied June 11, 1992.

Certiorari Denied Oct. 13, 1992.

Wood, Ris & Hames, P.C., Christopher M. Brandt, Denver, for plaintiff-appellee Great–West Life Assur. Co.

Berenbaum & Weinshienk, P.C., Charles A. Bewley, Martin D. Buckley, Denver, for defendants-appellants.

Opinion by Judge REED.

Defendants, Raintree Inn, a California limited partnership, and its general partner, Ronald W. Baumgarten, appeal from an order which discharged the receiver and which authorized his disbursements of certain funds to pay the deficiency balance due upon a promissory note and deed of trust held by plaintiff, Great West Life Assurance Company. We affirm.

This action was commenced by plaintiff's complaint in which it sought the appointment of a receiver pursuant to § 38–39–113, C.R.S. (1982 Repl.Vol. 16A) and the express language of plaintiff's recorded deed of trust authorizing such appointment in the event of default. The suit was instituted after plaintiff, through its foreclosure proceedings, had obtained a public trustee's certificate of purchase to the Raintree Inn hotel property in Colorado Springs. The foreclosure sale had resulted in a deficiency still owed to plaintiff upon the promissory note which it sought to recover.

The note, the deed of trust, and a recorded assignment of rents held by the plaintiff were executed by defendant Raintree Inn's predecessor in title to the subject property. Raintree Inn had acquired ownership of the property "subject to" the recorded encumbrances. It had not "assumed" the promissory note, nor had it, as owner, executed any other encumbrances or security agreements. The default in payments upon the promissory note had occurred, however, after it became the hotel owner.

The deed of trust and the assignment of rents were interrelated and in broad language subjected the rents, issues, and prof-

its from the property to a lien in favor of plaintiff.

The deed of trust created a security interest in "all rents, issues and profits, *income* and *revenue*" (emphasis supplied) from the "possession, use and enjoyment of the property" arising upon default. The language of the assignment of rents was broader. It created a *present* assignment, as opposed to merely a security interest in the rents, which by its language operated to transfer the right to collect rents and other income automatically upon the happening of default.

Further, the assignment indicates that it was intended to assure payment of the underlying debt and did not require any affirmative action by the holder of the note or trust deed to secure the rents, issues, and profits. Finally, by virtue of both the deed of trust and the assignment, any such rents obtained by the holder or assignee were required to be applied in reduction of the debt.

Relevant provisions of the assignment are as follows:

> It is the intention of the Assignor to create a present Assignment of all the rents, issues and profits now due or which may hereafter become due ... but inasmuch as this Assignment is made as additional security for the payment of the note herein above set forth, it is agreed that the Assignee's right to collect said rentals shall be conditioned upon the existence of default in the payment of said note according to its terms.
>
> . . . .
>
> Assignor does hereby authorize and empower the Assignee, its successors and assigns, or the holder of the Deed of Trust note to collect all of the *rents, issues, and profits, now due* or *which may hereafter become due under or by virtue of any lease* whether written or verbal, *or any letting of, or agreement for the use or occupancy of any part of said premises* and to take such action, legal or equitable, as may be deemed necessary to enforce payment of such rents, issues, and profits. (emphasis supplied)

After his appointment by the court, the receiver operated the hotel business for about six months and took possession of its income and revenues. Immediately upon his appointment, he also took possession of the hotel bank account approximating $178,000. The funds deposited in this account were all generated after the note became in default and were derived from room rentals and proceeds from the operation of the hotel's bar, restaurant, and vending machines. The record is devoid of proof, however, as to each component's contribution to the account.

At the time of the discharge of the receiver, the trial court determined that the deed of trust and assignment of rents entitled the receiver to collect and impound all the hotel revenues including the bank account because these funds were part of the rents, issues, and profits of the property in which plaintiff had a secured interest by virtue of its deed of trust and assignment of rents held as security for its promissory note. It further concluded that, because all income accruing in the period following default was required to be employed in reduction of the underlying indebtedness, the bank account funds were subject to plaintiff's lien regardless of the timing of the foreclosure or appointment of the receiver.

Thus, over defendants' objections, it ordered the receiver to pay, from the funds held by him, the obligations and bills of the hotel and also to pay to plaintiff the deficiency balance due upon its promissory note, together with interest and attorney fees provided therein.

This determination is contrary to the defendants' contentions (1) that room rentals and the proceeds from the restaurant, bar, and vending machines, are not "rents, issues, or profits" of the property included within plaintiff's instruments, and (2) that, in any event, plaintiff's entitlement thereto could not extend to the bank account because these funds were collected by Raintree Inn before the appointment of the receiver.

Central to these contentions is the fact that the note, deed of trust, and assignment of rents were executed not by Raintree, but its predecessor in title, that neither the note nor the security documents had been assumed by Raintree when it acquired the property, and that Raintree had executed no security agreements in favor of plaintiff.

## I.

Defendants' principal contention on appeal is that revenues from hotel operations are in the nature of personal property and, therefore, cannot be secured through an assignment of "rents, issues and profits" incident to the creation of an interest in realty under a deed of trust. We hold, under the particular documents here, that the revenue from hotel lodgings, bar and restaurant facilities, and vending machines, regardless of their specific character, fall within the class of security established by the assignment and the deed of trust.

The question presented is one which has not been previously addressed by Colorado courts, *i.e.*, a determination of the scope of the specific language contained in the documents here. *See In re Vickers*, 111 B.R. 332 (D.Colo.1990).

Resolution of this question must turn upon a determination of the parties' intent as expressed in those documents. Accordingly, appropriate rules of contract construction will be employed to decide the rights and liabilities of the parties. *See Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo.1990).

■ When the language of a contract is clear and unambiguous, rules of construction cannot be applied to vary the meaning of its terms. *Alexander Dawson, Inc. v. Fling*, 155 Colo. 599, 396 P.2d 599 (1964). The object of construction is rather to ascertain and effectuate the parties' mutual intent based on the language of the contract itself. *In re May*, 756 P.2d 362 (Colo.1988).

The mere fact that the parties dispute the legal effect of contract terms, however, does not render their meaning uncertain

for purposes of construction. *Rodriguez v. Safeco Insurance Co.*, 821 P.2d 849 (Colo. App.1991). Only when reasonably susceptible of more than one interpretation are contract terms considered to be uncertain or ambiguous. *Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo.1986).

■ Application of these principles here supports a construction of an assignment of rents which identifies revenues from operation of a business on the premises with rents, issues, and profits of the real property so long as unambiguous language of the governing instrument subjects the assignor's business to the debt.

A similar approach in the interpretation of assignment clauses has been displayed by a bankruptcy court in proceedings to adjudicate rights to hotel revenues. *In re Drake Hotel Associates*, 131 B.R. 156 (Bankr.N.D.Cal.1991). According to this holding, a lien exists when language of the assignment (or deed of trust) plainly reflects an intent to include those revenues directly arising from the conduct of business operations on mortgaged premises. This principle is based on a desire to assure payment of the underlying debt from sources the parties reasonably would anticipate to arise from actual use of the property.

We are aware of the considerable line of cases in the bankruptcy field which address the nature of hotel revenue and its character under a deed of trust or assignment of rents. As a general rule, these cases hold that hotel revenues are personal property, and not rents. Accordingly, the usual language of a commercial mortgage or deed of trust which provides for an assignment of the "rents, issues, and profits" of the mortgage property to the lender does not create a security interest in such revenues. *In re Tri–Growth Centre City, Ltd.*, 133 B.R. 524 (Bankr.S.D.Cal.1991); *In re Nendels–Medford Joint Venture*, 127 B.R. 658 (Bankr.D.Or.1991); *In re Shore Haven Motor Inn, Inc.*, 124 B.R. 617 (Bankr.S.D.Fla. 1991); *In re Sacramento Mansion, Ltd.*, 117 B.R. 592 (Bankr.D.Colo.1990) (applying California law); *In re M. Vickers, Ltd.*, *supra*; *In re Investment Hotel Proper-*

*ties, Ltd.,* 109 B.R. 990 (Bankr.D.Colo.1990) (applying Missouri law); *In re Ashkenazy Enterprises, Inc.,* 94 B.R. 645 (Bankr. C.D.Cal.1986); *In re Greater Atlantic & Pacific Investment Group, Inc.,* 88 B.R. 356 (Bankr.N.D.Okla.1988).

However, these cases generally address competing claims of creditors and the application of Article Nine of the Uniform Commercial Code in support of some of those competing claims, or are based on long-recognized distinctions between the relation of landlord-tenant on the one hand, and innkeeper and guest on the other, and the fact that the language of the assignment clause at issue was narrowly drafted so as not to encumber the mortgagor's business. In some instances, state statutes exist (not here present) which limit the scope of assignments to interests in realty. *Cf. Investment Hotel Properties, Ltd. v. City of Colorado Springs,* 781 P.2d 113 (Colo.App. 1989) (interpreting sales and use tax provisions of city code, not applicable here).

Here, the language of the assignment clearly gave plaintiff a right to virtually all of the income streams flowing from use of the defendants' property, not just income attributable to an interest in the real estate itself. Plaintiff's interest was defined broadly in the assignment of rents so as to encompass "rents, issues and profits ... by virtue of ... letting of, or agreement for the use or occupancy of any part of [the] premises...." We believe that use of the phrase "agreement for the use or occupancy of ... any part of the premises" indicates that the original parties to the assignment anticipated hotel operations and had the intent to grant not only a lien upon the real estate, but also an interest in revenue flowing from room rentals.

Also indicative of this intent is language of the deed of trust granting an interest in "income" and "revenues" and the existence of an entirely separate document assigning specifically an interest in leases.

A similar result commends itself with respect to income of the restaurant and bar facilities and vending machines. Although such income was derived from customers who paid primarily for goods and services,

rather than from lodgers who paid for use and occupation of space, we believe that the words in the deed of trust "rents, issues and profits, *income* and *revenues*" (emphasis supplied) must be taken to encompass all income or revenues from the various business activities conducted on the premises. In our view, that is what was bargained for by the original parties to the deed of trust. Thus, the trial court correctly included the hotel revenues as being within the coverage of plaintiff's lien. ·

### II.

Defendants also contend, in the alternative, that even if hotel revenues are covered under the terms of the assignment of rents, entitlement to the revenues relates back only to the appointment of the receiver because that was the time at which plaintiff had the right of possession. Defendants argue that the deed of trust and assignment of rents, when construed together, evidence an intention to create a security interest in the income and that, therefore, the assignment was not absolute, but required instead that the assignee be in possession of the property before it could collect any revenues which were subject to the lien. We disagree.

In this case, whether the assignment of rents is absolute in nature or whether its language creates a security interest in rents is a crucial one. If the assignment is absolute, then the assignee or beneficiary of the deed of trust is entitled without further action to all rents which became due after the date of default. If the assignment of rents is construed as granting a security interest, then the assignment does not become operative until the assignee files a foreclosure action, obtains possession of the property, impounds the rents, secures appointment of a receiver, or takes some other "effectual step" toward subjecting the rents to payment of the debt. *See Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986); *Megginson v. Hall,* 111 Colo. 104, 137 P.2d 411 (1943).

The *Martinez* decision implicitly recognizes the validity of an absolute assignment if the instrument demonstrates an

intention to have the rents applied in reduction of the assignor's debt. Thus, in *Wynn v. Adams County Bank*, 761 P.2d 234 (Colo.App.1988), we held that an assignment of rents clause in a lease was absolute in nature because rentals would be applied to reduce the balance due on an underlying note and, accordingly, that the assignee did not have to be in possession of the property before it could enforce the assigned rental.

Here, by taking the property subject to the underlying debt, Raintree agreed to an absolute assignment of rents which did not require placing the collection of hotel revenues within the court's jurisdiction to protect plaintiff's claim. The assignment was intended to be presently effective and contained provisions to assure payment of the debt out of the rentals. Furthermore, it was not contingent on having a receiver appointed to perfect an interest in the rentals and expressly conditioned assignee's right to collect rentals upon the existence of default. Given these provisions, the intent to create an absolute assignment of rents was sufficiently clear.

Order affirmed.

PIERCE and TURSI, JJ., concur.