In re RANCH PARTNERS, LTD., a California limited partnership, Debtor.

RANCH PARTNERS, LTD., a California limited partnership, Appellant,

v.

RESOLUTION TRUST CORPORATION, Receiver for Home Federal Savings Association of Kansas City, Appellee.

Civ. A. No. 92–K–1018.
Bankruptcy No. 91 25878 RJB.

United States District Court, D. Colorado.

Oct. 22, 1992.

William A. Richey, Jeffrey A. Weinman, Jeffrey A. Weinman, P.C., Denver, Colo., for Ranch Partners, Ltd.

Ann S. Vessels, Hecox, Tolley, Keene & Beltz, Colorado Springs, Colo., for Resolution Trust Corp.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Debtor Ranch Partners, Ltd. appeals the bankruptcy court's May 13, 1992 order prohibiting it from using post-petition rental income to pay reorganization-related attorney fees. Ranch Partners argues that it should be entitled to use its cash collateral to pay all of its attorney fees, not just those incurred in managing its property. The Resolution Trust Corporation (RTC), as receiver for the Home Federal Savings Association of Kansas City, disagrees but requests the scope of the bankruptcy court's order be expanded to include rents received on and after the date of Ranch Partners' default, not the later date upon which a receiver was appointed. I affirm.

### I. *Facts.*

Ranch Partners owns a shopping center in Colorado Springs, Colorado. In 1984, Ranch Partners received a $2 million loan from Home Federal Savings' predecessor, secured by a deed of trust on the shopping center which granted the lender an assignment of rents. Ranch Partners also executed a separate, collateral assignment of leases. On July 1, 1991, Ranch Partners defaulted on its loan. The RTC, as receiver for Home Savings, initiated foreclosure proceedings and obtained the appointment of a state court receiver for the property. Several days later, on December 2, 1991,

Ranch Partners filed for bankruptcy under Chapter 11.

On April 1, 1992, the RTC moved to limit Ranch Partners' use of cash collateral from the shopping center, seeking to protect its perfected security interest in the rents and profits of the property. The RTC requested the court to issue an order prohibiting Ranch Partners from using the cash collateral "except for the purposes of the care, preservation and maintenance of the Property and the payment of operating expenses as outlined in the decision of *In re Morning Star Ranch Resorts*, 64 B.R. 818 ([Bankr.] D.Colo.1986)." (R., Vol. I, Doc. 46 at 2.) After a hearing on the motion, the bankruptcy court entered an order granting the RTC's request and permitting Ranch Partners to expend profits from the center to pay

> expenses relating to the rental, care and maintenance of the Property ..., which expenses include any professional fees arising directly out of the rental, care and maintenance of the Property, but which do not include professional fees related to the Debtor-in-Possession's reorganization, which includes [sic], but are not limited to, such activities as preparation of a plan and disclosure statement, reviewing claims against the bankruptcy estate and objecting to such claims, and the filing of the required monthly financial reports required by the U.S. Trustee.

(*Id.*, Doc. 56 at 1.) The court restricted Ranch Partners from using any funds remaining after payment of the above expenses without the RTC's or its express consent and required Ranch Partners to maintain a separate account for cash collateral. I granted Ranch Partners' motion for leave to appeal this interlocutory ruling on June 2, 1992.

## II. *Issues.*

A. *Prohibition on Use of Cash Collateral for Reorganization–Related Attorney Fees.*

Ranch Partners contends that the bankruptcy court erred in prohibiting it from using its cash collateral to pay bankruptcy counsel. It argues that, under *Butner v.*

*United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979), the RTC's interest in its cash collateral must be determined under state law and that Colorado law does not grant the RTC the right to all of Ranch Partners' income from the property. By Ranch Partners' analysis, after its default and the appointment of a receiver, cash collateral from the property would first be applied to the expenses incurred by the receiver to maintain the property, including any fees of attorneys and other professionals, with the remainder going to the RTC. Therefore, it asserts, the RTC cannot by the happenstance of bankruptcy prevent Ranch Partners from using these funds to pay its attorneys. Alternatively, Ranch Partners contends that this restriction must be lifted to protect its right to an effective reorganization.

 Ranch Partners' analysis of this issue is nearly correct. It is true that the RTC's interest in Ranch Partners' cash collateral must be determined by reference to state law. *See id.* at 54, 99 S.Ct. at 917. Furthermore, Ranch Partners properly argues that the RTC would be entitled under state law to the cash collateral remaining after the expenses incurred by the receiver, including professional fees, are first paid. *See, e.g., Phillips v. Webster*, 162 Colo. 315, 426 P.2d 774, 777–78 (1967); *Hart v. Edley Corp.*, 482 P.2d 421, 425–26 (Colo.App. 1971). Ranch Partners drops the ball, however, in claiming that its bankruptcy attorney fees are in the same nature as the attorney fees a receiver incurs in managing property. They are not.

As explained in *Chaussee v. Morning Star Ranch Resorts Co. (In re Morning Star Ranch Resorts)*, 64 B.R. 818, 822 (Bankr.D.Colo.1986), a receiver's duties are to "preserve, protect and maintain the property." In carrying out these duties, a receiver incurs expenses which, depending on the character of the property, may include payments for utilities, employee wages, building maintenance and the like. Further, under normal receiverships, the receiver would be paid a receiver's fee. He might, as well, hire a managing company to manage the property and pay a

management fee. He might also engage accountants or attorneys in appropriate circumstances and pay their fees and expenses. All of those costs would come out of the rents received before any monies would be paid over to the lender. *Id.*

Little changes with respect to the property when a bankruptcy is commenced. Like a receiver, a debtor-in-possession is a fiduciary whose duty to preserve, protect and maintain the property is the same. *Id.* The debtor has many other duties unrelated to the preservation of estate property, however, such as the filing of schedules and financial statements and the review of claims. The debtor may require legal counsel to assist him with these activities as well, but they are unrelated to the management of the property and generally do not benefit the secured creditor. Consequently, legal fees which are properly payable out of cash collateral are those which are necessary to preserve and protect the property subject to the creditor's interest, such as fees for a forcible entry and detainer action or the resolution of a lease or contract dispute. That is the essence of the *Morning Star* court's holding that the debtor cannot use cash collateral for expenses relating to its bankruptcy duties and not connected with the operation of the property:

> The Debtor cannot utilize the net funds remaining to pay the ordinary costs of administering the bankruptcy estate, for those are expenses that are imposed upon the debtor and not upon the secured party. Thus absent compliance with 11 U.S.C. § 362(c)(2) the debtor should not be in a position to use the funds *to pay for the attorney for the estate,* to pay for accounting services for the estate, or to pay other expenses of administration of the Chapter 11 estate unrelated to the operation, care, preservation and maintenance of the property.

*Id.* (emphasis added). Accordingly, under the clear reasoning of *Morning Star*

*Ranch Resorts,* the restrictions the bankruptcy court placed on Ranch Partners' use of the cash collateral were appropriate.[1]

Ranch Partners further contends, however, that in other cases debtors have been permitted to use cash collateral to pay their bankruptcy attorney fees, relying on *MBank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393 (10th Cir.1987). In *O'Connor,* however, the court expressly found that the value of the creditor's collateral would be preserved because the debtor proposed to give the creditor a new lien worth over five times the amount of the creditor's existing secured interest. *See id.* at 1398. Here, Ranch Partners proposes to deplete, not replace, the collateral.

■ The general rule with respect to assets which secure the secured creditor's claim is that "attorney's fees will be paid only to the extent the value of those assets exceeds the amount of the secured creditor's claim." *In re KNM Roswell Ltd. Partnership,* 126 B.R. 548, 558 (Bankr. N.D.Ill.1991). If, as in this case, the debtor has not established that the value of the secured assets is more than the secured creditor's claim, the debtor's attorney fees cannot be paid at the expense of the secured creditor, notwithstanding its argument that representation by competent counsel is necessary to its effective reorganization. *See id. Compare In re Precast Structures, Inc.,* 122 B.R. 304, 306 (Bankr. S.D.Tex.1990) ("The relevant and most important factor [supporting the award of interim fees] is that the creditor here is not undercollateralized and the cash collateral has previously been found to be adequately protected.") Therefore, the bankruptcy court did not err in granting the RTC's motion to limit Ranch Partners' use of the cash collateral.

**B.** *RTC's Request for Modification of Order.*

In its response brief, the RTC requests modification of the bankruptcy court's order to include cash collateral generated on

---

**1.** I don't know that the *Morning Star* opinion actually needs the imprimatur of this court, but, if so, it is hereby given.

and after the date of Ranch Partners' default, July 1, 1991, rather than the date it obtained the appointment of a receiver, November 27, 1991. The RTC premises this request on the recent ruling by the Colorado Court of Appeals in *Great West Life Assurance Co. v. Raintree Inn*, 837 P.2d 267 (Colo.App.1992). In that case, the court held that an absolute, present assignment of rents is perfected as of the date of default, rather than the date the creditor takes affirmative action, such as obtaining the appointment of a receiver, to secure the rents. *Id.* at 271. The RTC states that it did not present this argument to the bankruptcy court because it was not aware of the decision in *Great West Life* at the time of the hearing on its motion. (The unpublished decision had been issued approximately twenty days earlier and had not yet appeared in the *Colorado Lawyer.*) Therefore, the bankruptcy court entered an order governing only cash collateral generated on and after the November 27 date.

 Although the RTC's position may be correct, I do not have jurisdiction to consider its request for modification of the bankruptcy court's order. The rules of bankruptcy procedure require a party desiring to cross-appeal to file a notice of appeal within ten days after the original notice of appeal is filed. Bankr.R. 8002(a) ("If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed...."). In addition, the rules require the cross-appellant to file a statement of issues on appeal and a designation of additional items, if any, to be included in the record. Bankr.R. 8006. The timely filing of a notice of cross-appeal is jurisdictional and cannot be waived. *Frymire v. Paine-Webber, Inc.*, 107 B.R. 506, 514 (E.D.Pa. 1989); *Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan*, 76 B.R. 563, 573 (N.D.Tex.1987), *aff'd*, 862 F.2d 513 (5th Cir.1988). Since the RTC did not timely file a notice of cross-appeal, its request

for modification of the bankruptcy court's order is denied.[2]

### III. *Conclusion.*

The bankruptcy court did not err in restricting Ranch Partners from using its cash collateral to pay only those expenses relating to its management of the property and not the fees of its bankruptcy counsel. In addition, though Colorado law may support the RTC's argument that it is entitled to cash collateral dating from Ranch Partners' default, this issue was not properly designated as one on cross-appeal. Therefore, I have no jurisdiction to modify the bankruptcy court's order to this effect. For these reasons, the bankruptcy court's judgment is AFFIRMED.

2. Because the RTC did not timely file a notice of cross-appeal, by order dated October 5, 1992, I denied its motion to designate as additional issue on appeal modification of the scope of the bankruptcy court's order to include rents received upon Ranch Partners' default. This remains a matter to be taken up by the bankruptcy court in the first instance.