In re RV CENTENNIAL
PARTNERSHIP,
Debtor.

CS FIRST BOSTON MORTGAGE
CAPITAL CORPORATION,
Plaintiff,

v.

RV CENTENNIAL PARTNERSHIP,
Defendant.

Bankruptcy No. 96–16587 MSK.
Adversary No. 96–1525 RJB.

United States Bankruptcy Court,
D. Colorado.

Nov. 27, 1996.

Scott R. Bauer, Petrie, Bauer & Vriesman, LLP, Denver, CO, for Plaintiff.

Robert M. Duitch, Robert M. Duitch, P.C., Colorado Springs, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court upon CS First Boston's Motion for Summary Judgment filed October 3, 1996. The Court finds that there are no genuine issues of material fact and that the matter is appropriate for summary judgment.

The undisputed facts are as follows. On July 14, 1996, the Defendant, in conjunction with a loan it received from Provident National Assurance Company ("Provident"), executed and delivered (1) a promissory Note for $2.4 million; (2) a Deed of Trust and Security Agreement creating a first-priority lien on certain real property located in El Paso County, Colorado, in favor of Provident; and (3) an Assignment of Leases and Rents.

These documents are attached to the Complaint as Exhibits 1, 2, and 3, respectively. The Promissory Note became due on August 1, 1993, but the parties agreed on several occasions that in exchange for specified consideration from the Defendant, Provident would not exercise it remedies under the loan documents. The last such "forbearance" agreement expired March 1, 1996. The Plaintiff, CS First Boston Mortgage Capital Corporation ("CS First"), became the owner of the loan and the loan documents and on April 1, 1996, sent the Defendant a statement showing the loan had matured and that the amount of the principal and interest due as of that date was $2,217,294.46. The Defendant did not pay any amount on the loan after that statement.

On April 24, 1996, CS First filed a Verified Complaint for Appointment of Receiver and Ex Parte Motion for Appointment of Receiver in the El Paso County District Court. On April 25, 1996, that court entered its Order Appointing Receiver (Complaint Exhibit 8). On April 25, 1996, Richard Davidson posted a Receiver's Bond and began to perform his duties as receiver, including the collection of rent, for use and distribution in accordance with the Order Appointing Receiver. On May 30, 1996, the Defendant filed its Chapter 11 bankruptcy petition.

On November 8, 1996, Gary D. Reifschneider, one of the partners of the Defendant, filed an affidavit stating that the Order Appointing the Receiver was not recorded in the real estate records of El Paso County, and the Receiver never took actual physical possession of the real estate nor posted any signs or notices of his appointment. Subsequent to the bankruptcy filing, the Receiver, on demand for turnover, tendered all funds held by him net of his expenses. Since the filing of the bankruptcy the Defendant has received and retained all rents from the tenant of the property.

CS First seeks a declaration that by operation of the Assignment of Leases and Rents all of the rents generated by the subject property from and after March 1, 1996, or at the latest April 25, 1996, are the property of CS First and are not the property of the Debtor/Defendant or of the Defendant's bankruptcy estate under 11 U.S.C. § 541. Defendant asserts, in effect, in its Answer and Counterclaim that the Assignment of Leases and Rents did no more than give CS First a security interest in those assets, and thus, those rents are property of the bankruptcy estate.

The U.S. Supreme Court has made it clear that the property rights of mortgagors and mortgagees are determined by state law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). This Circuit has followed that mandate in *Virginia Beach Federal Savings & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Circuit 1990). And in lock step this Court has applied the same rule in *Chaussee v. Morning Star Ranch Resorts Company*, 64 B.R. 818, 821 (Bankr.Colo.1986).

■■■ The problem thus becomes one of determining what the Colorado law is under the facts present. As the Plaintiff points out, under Colorado law an assignment of rents can either be an "absolute assignment" or a "security interest." *Great–West Life Assurance Company v. Raintree Inn*, 837 P.2d 267 (Colo.App.1992). But apparently the Plaintiff interprets the law to be that if the assignment is an "absolute assignment" versus a "security interest," then the mortgagee/lender is the owner and title holder of such rents and leases. Such is not the case. Even the court in *Great–West, supra*, does not go that far. As that court stated:

It created a *present* assignment, as opposed to merely a security interest in the rents, which by its language operated to transfer the right to collect rents and other income automatically upon the happening of default. . . . Finally, by virtue of both the deed of trust and the assignment, any such rents obtained by the holder or assignee were required to be applied in reduction of the debt. [Emphasis in the original]. 837 P.2d 267 at 269.

It should be noted the Colorado court did not say that language of the assignment operated to transfer the ownership of the rents, but only transferred the right to collect the rents and apply them to the debt. Nor could such an assignment which was intended to assure payment of the underlying debt be

considered a transfer of title to the leases and rents because Colorado has a statute that specifically prohibits such a result. That statute is C.R.S. § 38–35–117 and it reads as follows:

> Mortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien.

The basic purpose for making a distinction between an "absolute assignment" and a "security interest" in Colorado is for timing.

> If the assignment is absolute, then the assignee or beneficiary of the deed of trust is entitled without further action to all rents which became due after the date of default. If the assignment of rents is construed as granting a security interest, then the assignment does not become operative until the assignee files a foreclosure action, obtains possession of the property, impounds the rents, secures appointment of a receiver, or takes some other "effectual step" toward subjecting the rents to payment of the debt. *Great–West, supra*, at 271.

■ If the assignment is a security interest, then the mortgagee holds only an "inchoate lien" until it takes some affirmative step to perfect that lien. *Chaussee v. Morning Star Ranch Resorts Company, supra.*

■ Thus, under Colorado law, an inchoate lien on rents can be perfected in two ways: (1) if it is an absolute assignment, the lien is perfected merely by the default of the assignor/borrower; and (2) if the assignment is a security interest, the lien is perfected by the assignee/lender's taking some affirmative step, e.g., obtaining the appointment of a receiver as was done here. And, as was pointed out in *Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008 (D.Colo. 1985), if the assignee/borrower is in bankruptcy, the assignee/lender need only file a notice under 11 U.S.C. § 546(b) in order to perfect the inchoate lien.

But all that begs the issue. The fact remains that whether the assignment was absolute, or a security interest perfected by affirmative steps, or a notice was filed under § 546(b), all the assignee/lender has is a lien. None of the three occurrences above change that lien into ownership or title.

If ownership or title was transferred to the lender from the borrower, then there would be no requirement for the lender to apply any rents it received to the debt. It could use those rents as it saw fit. In addition, the assignment itself provides that once the debt has been satisfied, then the assignment is void. It is possible to construct a scenario whereby the lender begins receiving the rents which, after a period of time, are sufficient to pay off the debt. At that point the assignment is void and the lender has no further right to the rents. But if ownership had been transferred as asserted by the Plaintiff here, then the lender would be entitled to the rents *ad infinitum* and would be under no duty to apply the rents to the debt.

Plaintiff cites many cases to this Court for the proposition that an absolute assignment of rents divests title or ownership from the borrower and transfers ownership to the assignee/lender. Each of those cases is distinguishable on the basis that each is interpreting a state law different from Colorado. *In re Jason Realty, L.P.*, 59 F.3d 423 (3rd Cir. 1995); *First Fidelity Bank, N.A. v. Eleven Hundred Metroplex Assocs.*, 190 B.R. 510 (S.D.N.Y.1995); and *In re Glen Properties*, 168 B.R. 537 (D.N.J.1993), all dealt with New Jersey law. *In re Mount Pleasant L.P.*, 144 B.R. 727 (Bankr.W.D.Mich.), was concerned with Michigan law. *In re Union Meeting Partners*, 165 B.R. 553 (Bankr.E.D.Pa.1994), interpreted Pennsylvania law. *In re Salem Plaza Assocs.*, 135 B.R. 753 (Bankr. S.D.N.Y.), was an opinion by Judge Conrad from Vermont sitting by special designation, and concerned North Dakota law, which, incidentally, Judge Conrad held *did not* provide for transfer of ownership to the assignee of rents. *In re Galvin*, 120 B.R. 767 (Bankr.Vt. 1990), was another opinion by Judge Conrad, and it concerned only Vermont law. And *In re Gould*, 78 B.R. 590 (D.Idaho 1987), interpreted Idaho law.

 Because in Colorado an assignment of rents, even when perfected, does not transfer title or ownership to the assignee/lender, then *a fortiori* the assignor/borrower retains that ownership interest. And that ownership interest becomes property of the bankruptcy estate pursuant to 11 U.S.C. § 541 when the assignor/borrower files a petition in bankruptcy.

 That does not mean that the borrower then has unfettered use of those rents if the lender has perfected its inchoate lien. Rather, the rental receipts are cash collateral under 11 U.S.C. § 363, and lender is entitled to the protection which it would have had if a receiver had been appointed. *Chaussee v. Morning Star Ranch Resorts Company, supra.* In this case the receiver was to take control and custody of the rents and of the subject real property. He was to use the rents collected to manage the property, repair and maintain it, pay the utilities, etc., and to remit the balance to the lender, who then had to apply that sum to the debt. That means that the Debtor may not use any of the rents from the subject property to fund its reorganization. See, e.g., *In re Jefferson Business Center Assocs.*, 135 B.R. 676 (Bankr.Colo.1992). And indeed, the Debtor/Defendant may not use such cash collateral for any purpose without permission of the lender or by order of the court in the main administrative case.

 A review of the Assignment in this case leads this Court to conclude that by its terms it can best be described as schizophrenic. If you read some passages, it would seem to be an "absolute assignment." If you read others, it appears to be clearly a "security interest." The Court agrees with counsel for the Defendant that it appears that the author of the document took bits and pieces from every reported decision across the country trying to cover every eventuality. But in doing so all that was accomplished was a hodge-podge. Therefore, I conclude that in this case there was no "absolute" assignment. However, under *Great–West, supra,* the Plaintiff did take an "effectual step" toward subjecting the rents to payment of the debt, i.e., it got a Receiver appointed on April 25, 1996. It was at that point that the Plaintiff's inchoate lien on the rents was perfected.

Based upon the foregoing facts and conclusions of law, it is, therefore,

ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. From and after April 25, 1996, the Plaintiff had perfected its lien in the rents of the subject property.

2. Upon the filing of the bankruptcy petition by the Defendant on May 30, 1996, said rents became property of the Defendant's bankruptcy estate pursuant to 11 U.S.C. § 541.

3. Said rents are subject to the requirements of 11 U.S.C. § 363 under the supervision of this Court in Case No. 96–16587 MSK.